OPINION OF THE COURT
C. Raymond Radigan, J.
The petitioner in this construction proceeding requests a *951 determination of the validity of a pour-over residuary bequest in the decedent’s will to a revocable living trust created by him.
The decedent was survived by his wife and four children of two prior marriages. The assets of the estate which would pour over into the trust if its validity is established are reported to be in excess of $100 million. Following the decedent’s death, the trust provides that income is to be paid to the surviving spouse from substantially all of the trust principal reduced by a sum approximating an exemption equivalent of the unified credit, or $600,000 (Internal Revenue Code [26 USC] § 2010), which amount is payable to the decedent’s four children outright. Charities and charitable lead trusts in which the decedent’s issue are interested receive the remainder of the trust.
If the trust is invalidated, as urged by three of the four children, presumably the residuary pour-over provisions of the will would be rendered ineffective, resulting in an intestacy as to substantially all the estate. Moreover, in such an event the children would obviously seek to obtain the entire residuary estate and exclude the surviving spouse from any intestate share by reason of an alleged antenuptial agreement executed by her, waiving any interest in the estate.
The primary attack directed to the trust by the children centers on those provisions which gave the decedent as settlor and sole trustee complete power and control over the trust and its administration, including the power to direct the disposition of principal and interest during his lifetime or to revoke the trust in its entirety. They argue that such a trust is "illusory” and therefore invalid. However, historically, that doctrine has been employed as a means of voiding trusts in cases involving the right of election of surviving spouses (Newman v Dore, 275 NY 371; MacGregor v Fox, 280 App Div 435, affd 305 NY 576). The cases and commentators, however, have discussed the question whether the reservation of total control over the trust renders the trust testamentary in nature with the result of its invalidity if not executed as a will (1A Scott, Trusts, §§ 57-57.1 [4th ed]). However, the great weight of authority in New York clearly permits grantors to reserve a beneficial interest in the trust, including the power to revoke, modify or control its administration, without running afoul of the argument that it is an invalid testamentary disposition (Van Cott v Prentice, 104 NY 45; Pinckney v City *952 Bank Farmers Trust Co., 249 App Div 375; Matter of Gould, 34 Misc 2d 58).
But it was precisely because of such lingering doubts about the use of pour-overs that statutory sanction was given to pour-overs by the enactment of EPTL 3-3.7. While it may be true that the primary doubt removed by the statute was that concerning the effectiveness of a pour-over to an amended or amendable trust, that was not the only area of doubt addressed by the legislation. Clearly, there were other doubts concerning the use of pour-overs in New York and precisely those raised by the children. The statute itself expressly states in part the pour-over is valid even though "[t]he right is reserved in such trust instrument (A) to exercise any power over any property transferred to or held in the trust or (B) to direct during the lifetime of the settlor or any other person, the persons and organizations to whom or in whose behalf the income shall be paid or the principal distributed.” (EPTL 3-3.7 [b] [2].) Then as in an excess of caution, the section eliminates any vestige of the invalid testamentary disposition argument by also expressly providing that the pour-over is valid even though "[t]he trust instrument or any amendment thereto was not executed and attested in accordance with the formalities prescribed by 3-2.1.” (EPTL 3-3.7 [b] [3].)
In their very concerted effort to undo the work of their father, it is surprising that the children seem to have overlooked what in the absence of the statute would have been a most promising area of litigation or controversy: That of whether the pour-over trust must be funded. Traditional concepts of trust law require that a trust be funded by a res (Brown v Spohr, 180 NY 201, 209; Matter of Ihmsen, 253 App Div 472). On occasion, trusts intended as pour-over receptacles are only nominally funded with possibly $100 or, as in this case, simply $1. However, the statute expressly puts this doubt to rest by providing for a funded or unfunded trust (EPTL 3-3.7 [a]; 9 Rohan, NY Civ Prac fl 3-3.7 [1]), although at least one commentator bridled at such a dramatic departure from well-recognized trust principles (Hawley, "Statutory Blessing” and Pour Over Problems, 102 Trust and Estates 896 [Oct. 1963]). Nevertheless, the felt need in the estate planning community for such a device overrode any counterbalancing thought of adherence to legal theory. The pour-over statute therefore is in effect sui generis, standing on its own and existing by dint of statutory fiat (Second Report of Temp St Commn on Modernization, Revision and Simplification of Law *953 of Estates, 1963 NY Legis Doc No. 19, at 309-310). In light of its research in the field, the Temporary State Commission on Estates recommended the following: "In the light of the uncertainty generated by the case law of New York as to the extent to which a 'pour-over’ will be validated, the many areas in which there is no statutory or case law, the advantages accruing to residents of New York in being enabled to use the device, and the unanimity with which those bodies most versed in the law of estates have recommended a statute to accomplish the purpose, it is recommended that a statute be enacted which will validate 'pour-overs’ not only under the circumstances where they are now permissible, but also under circumstances where they are either not now permissible or there is doubt about their use.” (Id., at 310.) With this extraordinary reservoir of research and recommendations to support the pour-over statute, it is somewhat disingenuous for the children to argue, "It is nowhere suggested that in enacting [EPTL 3-3.7], the legislature intended to overrule prior case law including [cases] which held that reservation of complete dominion and control over trust property prevents a valid trust from being created.”
The final argument urged by the children is that the trust is invalid because of the so-called "merger” doctrine which in effect requires that for a subsisting trust there cannot be a sole trustee and a sole income beneficiary (Matter of Phipps, 2 NY2d 105, 108). The trust, however, does not limit payments to the decedent only, but permits payments of income and distribution of principal to be made in addition to the decedent’s wife and their "lineal descendants.” This would normally be sufficient to obviate any question of the merger doctrine (Matter of Kagan, 118 Misc 2d 1084). Moreover, while the cases dealing with the merger doctrine do speak of the trust "terminating” or the trust relationship ending (Matter of Reed v Browne, 295 NY 184), the actual result, however, is merely converting the sole trustee/sole income beneficiary’s interest into a legal life estate or tenancy, not the destruction of the remainder interest (Weeks v Frankel, 197 NY 304, 311). For all interests to terminate, the sole income beneficiary must not only be the sole trustee, but also the sole remainder-man (Matter of Bowers, 2 Misc 2d 482). Where that is the factual situation, "[t]he result is a merger, not merely into a legal life estate, Matter of Reed v. Browne, 295 N.Y. 184, 66 N.E. 2d 47, 165 A.L.R. 1061; Weeks v. Frankel, 197 N.Y. 304, 90 N.E. 969, but into a fee simple * * *. The purported trust *954 is ineffective” (In re Atkinson’s Estate, 114 NYS2d 808, 809). While the children might then revert back to their first argument that the power to revoke the trust was tantamount to a merger of all interests in the decedent, the simple answer is that interests which are defeasible are nevertheless genuine interests while unrevoked and never having been revoked by the decedent are now unassailable (Pinckney v City Bank Farmers Trust Co., 249 App Div 375, supra).
Finally, the stark contrast between the factual situation presented in at least one of the cases cited by the children (Matter of Fontanella, 33 AD2d 29), and the facts here require comment. In the Fontanella case, a living trust was sought to be established from bits and pieces of oral conversations and informal notes and letters from the decedent to his sister-in-law, the initial oral instructions being merely " 'to hold on to [the stocks] and just keep [them] and send [me] the dividends’ ” until further instructions (supra, at 30). There the court did comment on the decedent’s reservation of total control over the shares of stock, but principally emphasized the informality and ambiguity in the creation of the relationship, concluding that no trust had been created. The plan pursued by the decedent in the Fontanella case is obviously light-years away from the plan adopted by the decedent here. Here the decedent’s estate plan must be described as precise, expert and sophisticated. It is clear that considerable thought and planning of an expert nature was required to produce the resultant cohesive and integrated plan whereby the decedent’s probate estate was to be consolidated with a previously created revocable living trust. The trust itself demonstrates the decedent’s care and concern that the optimum marital deduction be availed of by creating a qualified terminable interests property trust or, simply, a "Q-Tip” trust (Internal Revenue Code [26 USC] § 2056 [b] [7]) to avoid an enormous estate tax which would otherwise be payable considering the size of this estate. No sound legal argument requires this court to set to naught such a well-conceived plan.
Accordingly, the court concludes that the revocable living trust created by the decedent dated June 21, 1985 and as amended on July 25, 1985 is a valid and subsisting pour-over trust and receptacle of the residuary bequest made by the decedent’s will as specifically authorized by statute (EPTL 3-3.7), and the documents are so construed.