OPINION OF THE COURT
Michael H. Feinberg, S.
This is a motion for summary judgment in a proceeding to declare a trust invalid, which previously has been consolidated by stipulation with a contested probate proceeding.
The decedent died on July 23, 1998, survived by two nieces, Lorraine Neri, the petitioner, and Joan Ozga, the objectant. On April 12, 1997, he executed an “Estate Planning Portfolio,” drafted by two attorneys, George Banat (Banat) and Thaniel Beinert (Beinert). The portfolio included a will, trust, living will and health care proxy. The will is a four-page document under which his estate passes to the Thomas D. Klosinski Living Trust (the Trust), a revocable pourover trust which he executed the same day. If the Trust is ineffective at his death, his property is distributed under the terms of the Trust as if it were in full force and effect. Petitioner is named executrix of his will and her husband is named successor executor.
The Trust agreement is a document of over 60 pages. Under it, the decedent receives a lifetime income interest. Upon his *716 death, the Trust terminates and objectant receives $200 and petitioner the remainder. The decedent and petitioner are trustees. The decedent reserves the right to revoke the Trust, as well as to control income distributions and investments. The decedent signed the Trust agreement as “trustmaker” and trustee; petitioner signed as trustee.
Petitioner offered the will for probate and objections were filed by objectant on the grounds that the instrument was not the last will and testament of the decedent, that the decedent’s signature was a forgery, that the instrument was not executed in accordance with the formalities required by law, that the decedent lacked testamentary capacity, and that the instrument was not freely and voluntarily made, but was procured by fraud, duress and undue influence. A jury trial has been demanded.
Discovery in the probate proceeding was completed, and petitioner filed a note of issue and statement of readiness. Thereafter, objectant brought a proceeding to declare the Trust invalid. In addition to the grounds alleged in her objections to probate of the April 12, 1997 instrument, objectant raises numerous technical reasons why the Trust is invalid. She also raises objections to its use as a vehicle to receive the residuary estate. The two proceedings were consolidated and petitioner filed a new note of issue and statement of readiness to try both the probate proceeding and trust proceeding. Objectant then filed the instant motion for summary judgment declaring that the Trust is invalid or, in the alternative, that the Trust is not a valid pourover trust.
Objectant claims that the Trust is invalid because it was maintained by the settlor in a looseleaf binder. At his deposition, Banat testified that he had known petitioner a long time. Shortly before the execution of the will and trust, the decedent called him to discuss making a will. Banat went to visit him in Staten Island at petitioner’s house. At that meeting, the decedent told him he wanted to leave his estate to petitioner and did not want objectant to receive anything. Banat discussed the creation of a revocable trust in addition to the execution of a will. The decedent indicated that he was interested in creating a trust and confirmed this interest in a telephone conversation soon afterwards. Banat discussed the matter with Beinert, from whom he rented his office space. Banat and Beinert then prepared a will, pourover trust, affidavit of trust, health care proxy, and living will, along with a number of other documents, which they placed in a looseleaf binder entitled “Estate Plan *717 ning Portfolio.” The attorneys made a second set of documents, each of which was stapled separately.
On April 12, 1997, Beinert, Banat and Ms. Gallagher, an attorney who was a friend of Beinert, visited the decedent at petitioner’s house to execute the documents. They brought both sets of documents. Beinert reviewed the terms of the Trust with the decedent. Beinert gave the decedent $10 to initially fund the Trust. The decedent then signed both copies of the Trust agreement and petitioner came in and signed as trustee. Their signatures were acknowledged by Beinert. Petitioner then left the room and the decedent signed both copies of the will and the health care proxies and living trust forms. After these documents were signed, the attorneys left. They took with them the stapled set of original documents and left the looseleaf binder, with its duplicate original set of documents, with the decedent. The decedent never transferred any other assets to the Trust. After he died, petitioner sent the original will from the looseleaf binder to the attorneys, who filed it with the court, keeping the duplicate stapled original instrument. At the court’s insistence, the complete unbound set of documents were filed, including the Trust.
As to the argument that the trust is invalid because it was maintained in a looseleaf binder, whether or not a trust is valid is a question of law (Bankers Trust Co. v Topping, 180 Misc 596). The validity and construction of an inter vivos trust are determined by the law in effect when the instrument was executed (Matter of Kellogg, 36 Misc 2d 1064). At the time the Trust agreement was executed, New York’s imposition of formal requirements on the execution of lifetime trusts had not yet taken effect. New section EPTL 7-1.17 only became effective on June 25, 1997, and only applied to lifetime trusts created on or after this date (L 1997, ch 139, § 7). “Until the passage of this statute, New York, a state with strict and rigid formalities for wills (EPTL 3-2.1), did not have any rules mandating formal requirements for lifetime trusts except for the pourover trust of EPTL 3-3.7, and that only because the pourover trust is an exception to the strict rule against incorporation of unattested documents into wills by reference” (Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 7-1.17, 2001 Pocket Part, at 43).
When the Trust agreement was signed, no specific language was necessary to create a trust (Brooklyn Trust Co. v Kernan, 108 Misc 452, affd 191 App Div 895). All that was necessary was: (1) a designated beneficiary, (2) a designated trustee, (3) a *718 fund or other property sufficiently identified to allow title to pass to the trustee, and actual delivery of the fund with the intention of passing legal title (106 NY Jur 2d, Trusts § 59, at 91; see, Brown v Spohr, 180 NY 201; Kahn v Tierney, 135 App Div 897, affd 201 NY 516). “The trust arises because the parties intend to create it, and once created, the trust becomes a legal entity” (106 NY Jur 2d, Trusts § 44, at 72).
Objectant relies on Matter of Pozarny (177 Misc 2d 752), for the proposition that a trust contained in a looseleaf binder is invalid. In Matter of Pozarny, the court was faced with a similar estate planning kit, including a living trust and a pourover will filed in a looseleaf binder. The trust agreement was so loosely drafted that the court noted dozens of inconsistencies, including such basic issues as the possibility that the decedent had improperly attempted to amend article Eight of the trust, which governed distribution of trust principal upon the settlor’s death (id. at 756-757). Nonetheless, the court refused to treat the trust as a nullity and construed the trust’s provisions relating to the distribution of the trust upon the settlor’s death (id. at 762).
The facts presented by the instant case represent an even stronger one for the viability of the Trust. In the instant case, an attorney supervised its execution. The looseleaf edition appears complete and in order. The stapled version is accounted for and agrees with the looseleaf version. There is no indication that the Trust has been amended. While the execution of a trust maintained in a looseleaf binder creates unique problems, it is not invalid per se.
Objectant next argues that even if the Trust agreement created a trust, the trust fails under the doctrine of merger. The doctrine of merger holds that where the same person has both the equitable interest and legal interest in property, no trust is created and the holder takes a legal estate in the property, whether a life estate or a remainder interest. The doctrine is based upon the principle that a trust arises only when the legal and equitable interests in property are vested in different individuals (Matter of Coutts, 140 Misc 93, affd 235 App Div 705, affd 260 NY 128).
Until 1997, New York followed this doctrine, which was codified in EPTL 7-1.1. In 1997, EPTL 7-1.1 was amended to abolish the doctrine of merger except for trusts in which the sole trustee was the only beneficiary of the trust (L 1997, ch 139, § 2). However, this amendment did not take effect until June 25, 1997, after the Trust was created (L 1997, ch 139, § 7).
*719 Nonetheless, this doctrine has no application to the instant Trust. Article One, section 1, of the Trust agreement provides for two trustees, the decedent and the petitioner. It is hornbook law that there is no merger of the income interest when there are two trustees (see, Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 7-1.1, at 187). Similarly, there is no merger of the remainder interest because the remainder interest is allocated between objectant and petitioner under article Seven of the Trust agreement.
Objectant attempts to avoid the clear inapplicability of the doctrine by arguing that the reservation of authority in the income beneficiary/trustee renders the appointment of the second trustee illusory. Under article Four of the Trust agreement, the income beneficiary/trustee retained the power to direct the distribution of income and principal. In addition he retained the right to specifically approve or disapprove of each Trust investment, purchase or sale. Finally, he retained the right to revoke or amend the Trust. Objectant argues that the effect is to make the second trustee superfluous, triggering the doctrine of merger.
No case has been found in which the appointment of the second trustee is rendered illusory by the reservation of authority in a cotrustee. Objectant appears to be arguing either that the trust is illusory or that the trustee is a passive trustee. These concepts are inapplicable to the trust at bar.
An illusory trust is one in which the settlor retains such control over the trust that it is held to be a testamentary substitute, invalid unless executed in accordance with the statute of wills (Matter of Sackler, 145 Misc 2d 950; 1A Scott, Trusts § 57, at 124 et seq. [4th ed]). The courts have not favored claims that a trust is “illusory.” As Surrogate Radigan noted, “the great weight of authority in New York clearly permits grantors to reserve a beneficial interest in the trust, including the power to revoke, modify or control its administration, without running afoul of the argument that it is an invalid testamentary distribution” (Matter of Sackler, supra at 951).
Thus, courts have held that the right to revoke or modify a trust did not make the trust illusory (Von Hesse v MacKaye, 136 NY 114; Matter of Gould, 34 Misc 2d 58; Restatement [Second] of Trusts § 58). Similarly, the right to control investments, even combined with the right to revoke or amend the trust did not make the trust illusory (Matter of Ford, 279 App Div 152, affd 304 NY 598; Pinckney v City Bank Farmers Trust Co., 249 App Div 375). Although there are cases to the con *720 trary, the issue was resolved by enactment of EPTL 3-3.7, which provides, inter alia, that a pourover trust is valid notwithstanding the right “to exercise any power over any property transferred” (EPTL 3-3.7 [b] [2] [A]; Matter of Sackler, 145 Misc 2d 950, 951). If the reservation of the right to revoke, modify or control trust administration is insufficient to invalidate a trust as illusory, it should be equally insufficient to render the appointment of the second trustee illusory.
Nor can it be said that the second trustee is a passive trustee. The claim that a trustee is a passive trustee is usually made in connection with a claim against that trustee for improperly delegating his duties to a cotrustee or third party (see, Matter of Rothko, 43 NY2d 305). This is not the case at bar.
There is also a concept of a passive trust, which is another instance in which an otherwise valid trust is held to be invalid. In the case of a passive trust, the trust is invalid because there are no duties for the trustee. Where it is shown that the only duty of the trustee is to passively hold the property for the beneficiary, no trust is created and the property devolves to the beneficiary as a legal estate (EPTL 7-2.2; see, 1A Scott, Trusts § 69.2, at 412-414 [4th ed]). In the instant case, the powers clause of article Fourteen of the Trust agreement provides the cotrustees with significant duties, sufficient to defeat a claim that the trust is a passive trust. The reservation of rights in article Four of the Trust agreement does not change this result.
Without a showing that the nomination of the second trustee is somehow defective, the claim that the Trust is invalid under the doctrine of merger must be rejected. Therefore, the Trust agreement creates a viable and enforceable trust. However, this is a small victory for petitioner, since the Trust contains only $10. The real issue is objectant’s argument that the Trust is an improper pourover trust under New York law and is incapable of receiving the residuary estate under the propounded will.
The pourover trust is an exception to New York law that a will cannot incorporate a document not executed in accordance with the formalities of a will. “It is unquestionably the law of this state that an unattested paper which is of a testamentary nature cannot be taken as a part of the will even though referred to by that instrument” (Booth v Baptist Church of Christ, 126 NY 215, 247). The rationale for not allowing incorporation by reference is the possibility of fraud or mistake in relying on an outside writing, not executed in accordance with the formality required to execute a will, to determine the devolution of an estate.
*721 Nevertheless, the courts recognized certain exceptions to this general rule, as long as the document’s provisions were clear and were in existence prior to the execution of the will. Thus, for example, courts have sustained pourovers to the beneficiaries named in a will of another (see, Matter of Piffard, 111 NY 410; Matter of Fowles, 222 NY 222); pourovers to inter vivos trusts that were irrevocable and could not be amended (Matter of Rausch, 258 NY 327); pourovers to amendable inter vivos trusts that were not amended after execution of the will (In re Snyder’s Will, 125 NYS2d 459); and pourovers to amendable inter vivos trusts which were amended only as to administrative provisions (Matter of Ivie, 4 NY2d 178). However, the effectiveness of a pourover to a trust in any other situation was unclear.
To encourage the use of pourover trusts, the Legislature enacted Decedent Estate Law § 47-g (2d Report of Temp St Commn on Estates, Rep No. 6.1B, 1963 NY Legis Doc No. 19). When the EPTL was adopted, Decedent Estate Law § 47-g was carried over as EPTL 3-3.6 (L 1966, ch 952) and later renumbered EPTL 3-3.7 in 1967 (L 1967, ch 472, § 2).
As the statute read in April of 1997, when the Trust and the will were executed, a testator could distribute all or any part of his estate to a trust, provided the terms of the trust were in writing and the trust was “executed and acknowledged by the parties thereto in the manner required by the laws of this state for the recording of a conveyance of real property, prior to or contemporaneously with the execution of the will, and * * * is identified in such will” (EPTL former 3-3.7 [a]; see, Matter of Pozarny, supra).
Objectant makes a number of arguments why the Trust is ineffective as a pourover trust. She first argues that a pourover trust agreement bound by a looseleaf binder is ineffective as a matter of law, again relying on Matter of Pozarny (supra). As noted above, the court in Matter of Pozarny found that the trust agreement contained in a looseleaf planning kit was a valid trust. However, it went on to hold that the trust created was invalid as a pourover trust. The court raised two concerns created by the use of a looseleaf format that made it inappropriate for a pourover trust.
The first concern was the “free removal and substitution of pages, making it impossible to determine whether and how often the trust may have been altered, which pages constitute the instrument as originally signed, which existed on date of death, and which may have been added after death” (id. at 764-765). This is a reliability issue.
*722 This issue is exemplified in Pozarny, where the decedent was sent a number of loose pages amending article Eight of the trust, the article that identified the remaindermen, along with instructions to replace the old article Eight with the new one. At the decedent’s death, the attorney for the estate found four loose pages of an article Eight near the binder. These pages were unsigned, unacknowledged or undated. Assuming they were the intended new article Eight, the attorney removed the pages in the binder and inserted the loose ones. The court found that the decedent’s attempt to amend the trust by such informal means was invalid. Unable to be sure which article Eight represented the original and which the invalid replacement, the court refused to pourover the estate into the trust.
The second concern raised by the court was the fact that the trust agreement was signed on a separate sheet and acknowledged on a following sheet, although there was ample room for acknowledging the signatures on the signature page. “Because neither the signature page nor the acknowledgment page is bound or securely fastened to the other pages in the notebook, we cannot be sure which pages constitute the trust as executed and acknowledged by the decedent” (id. at 765). The court held that as a result of these concerns and others,[1] the trust was an invalid receptacle to receive the proceeds of the decedent’s will (id. at 767).
Nonetheless, the decision, properly interpreted, does not hold that an unbound trust agreement is an invalid pourover trust as a matter of law. The Court of Appeals has consistently cautioned against carrying the prohibition against incorporation by reference “to ‘a dry logical extreme’ ” (Matter of Fowles, 222 NY 222, 233, quoting Noble State Bank v Haskell, 219 US 104, 110).
Prior law allowed incorporation by reference to a prior will (Matter of Piffard, 111 NY 410; Matter of Fowles, 222 NY 222). The will may be either fastened or unfastened. Indeed, it is well settled law that an unfastened will may not be denied probate, provided that the loose sheets form a single and continuous instrument (see, e.g., Matter of Powell, 90 Misc 2d 635; In re Costello’s Will, 114 NYS2d 525; Matter of Rof, NYLJ, Jan. 28, 2002, at 22, col 6; Estate of D’Angelo, NYLJ, Sept. 27, 2001, at 23, col 4; Estate of Ozer, NYLJ, Sept. 11, 2001, at 19, *723 col 3; Estate of Gelfant, NYLJ, Sept. 5, 2001, at 19, col 6). Since the rationale for the prohibition against incorporating by reference is that to hold otherwise might undercut the sanctity of wills, there is no reason why an unfastened document can be admitted to probate as a will but cannot be incorporated by reference in the will itself.
This was recognized by the Surrogate in Matter of Pozarny. “To insure the certainty and security of our system of wealth transfer at death, we cannot permit the incorporation by reference of an unattested document consisting of loose pages in the absence of safeguards that assure the integrity, authenticity, and validity of that document” (id. at 769 [emphasis added]).
Thus, the primary concern of the court when faced by an unfastened will or trust is the same, namely the possibility for fraud and mistake (see, Matter of Fowles, 222 NY 222, 233; Matter of Powell, supra; Matter of Andrus, 156 Misc 268). Whether considering unfastened trusts or wills, the court must be concerned with whether “the circumstances are present which exclude any reasonable possibility of chicanery or mistake” (Matter of Powell, supra at 637; Matter of Andrus, 156 Misc 268). In reviewing unfastened pourover trusts in particular, with their more informal execution, the court must be satisfied that there are “safeguards that assure the integrity, authenticity, and validity of that document” (Matter of Pozarny, supra at 769).
In the instant case, there is evidence of such safeguards, namely, the existence of the stapled executed copy with which the looseleaf version can be compared. No evidence has been presented that the document was amended. The pages are of the same type of paper. The printing is the same and the handwritten portions are consistent. The pagination appears sequential and complete. Moreover, if the looseleaf binder original is ineffective, the copy executed by the decedent, stapled, and maintained by the attorneys is sufficient to establish a valid pourover trust. In effect, objectant is asking this court to hold, as a matter of law, that the Trust agreement is ineffective as a pourover trust merely because the decedent kept a duplicate original in a looseleaf binder. This makes no sense. Accordingly, under the facts of this case, the Trust agreement is not an invalid pourover trust as a matter of law.
Objectant next argues that, since the trust terminates upon the decedent’s death, there is no trust capable of receiving the residuary estate. This argument is based upon article Nine, section 2 of the Trust agreement, which provides that *724 upon the death of the settlor “the trust share set aside for [petitioner] shall forthwith terminate and my trustee shall distribute all undistributed net income and principal to [petitioner], free of trust.” Objectant argues that therefore there is no trust into which the residuary estate can be distributed and it passes to the distributees by intestacy under article Ten of the Trust.
This argument fails because the pourover trust continues until the trust assets are collected and distributed according to the trust terms, notwithstanding language in the trust agreement that the trust terminates upon death of the income beneficiary. “When the time for the termination of the trust has arrived, the duties and powers of the trustee do not immediately cease; until the trust is actually wound up, he has such duties and powers as are appropriate for the winding up of the trust” (4 Scott, Trusts § 344, at 543 [4th ed]; Matter of Thomas, 254 NY 292; Restatement [Second] of Trusts § 344).
The concept that the trust continues is critical, since it has been held that the effect of a pourover provision in a will is to distribute the bequest to the inter vivos trust (rather than incorporating the terms of the inter vivos trust in the will) (see, Matter of McKee, 132 Misc 2d 562, 567; Matter of Herrig, 122 Misc 2d 740). Objectant’s argument would mean that a pourover to a trust terminating at the testator’s death would result in intestacy, contravening the intentions of the testator. Because intestacy is to be avoided where possible and the primary duty of the court is to effectuate the testator’s intentions whenever possible, objectant’s argument was rejected by the court in Matter of Herrig (supra). “In considering the effect on the will and the inter vivos trust, the court does not look to what happened when the will became operative, but at what the testatrix intended when she arranged the disposition of her residuary estate” (id. at 743, citing Matter of Hoffman, 201 NY 247). The court went on to hold that the residuary estate poured over into the inter vivos trust for distribution. For the reasons enunciated by the Surrogate in Matter of Herrig, the court holds that the termination of the trust upon the decedent’s death does not terminate the trust until the proceeds of the estate have been received and distributed according to the Trust agreement.
Objectant next claims that the Trust is ineffective because it was never funded. Mr. Beinert testified that he gave the decedent $10 at signing to fund the Trust. Even if the Trust was never funded, a pourover trust is an exception to the usual *725 requirements that there must be a trust res for a trust to be effective. It is expected that the trust will be funded with assets from the estate (see, 2 Rohan, NY Civ Prac-EPTL ¶ 3-3.7 [2] [a], at 3-438—3-438.1 [2001]).
Finally, objectant argues that the pourover trust is ineffective because it was not executed in conformity with the requirements of EPTL 3-3.7. As noted above, when the Trust was executed, EPTL 3-3.7 merely required that it be executed and acknowledged by the parties thereto in the manner required for the recording of real property. Objectant raises two objections to the acknowledgment.
The first objection is that the jurat clause of the acknowledgment is erroneous. The testimony of all witnesses is that the Trust agreement was executed at petitioner’s home in Staten Island, although the venue provision of the acknowledgment recites that the document was acknowledged in Kings County, New York. Objectant claims that if the document was executed in Brooklyn, the testimony of the witnesses cannot be relied upon. In the alternative, if the document was executed in Staten Island, the acknowledgment is invalid.
It is clear that the venue provision is in error. This does not make the acknowledgment void. It is presumed that the notary who took the signature did so within the limits of his jurisdiction (People v Snyder, 41 NY 397; 1 Warren’s Weed, New York Real Property, Acknowledgments § 3.06 [4th ed]). Consequently, an improperly stated venue may be cured nunc pro tunc (2 Carmody-Wait 2d, NY Prac, Acknowledgments § 5:28; 1 Am Jur 2d, Acknowledgments § 35). Where the error is apparent, the court may treat the error as a nullity (see, Donahey v Donahey, NYLJ, Oct. 19, 1999, at 32, col 6). At most, the discrepancy creates an issue of fact.
Objectant, however, raises a more serious objection to the form of the acknowledgment. When the Trust agreement was executed, EPTL 3-3.7 required a pourover trust be executed and acknowledged by the parties in the manner required for recording of real property. Section 306 of the Real Property Law required, in pertinent part, that the person taking the acknowledgment “indorse thereupon or attach thereto, a certificate, signed by himself, stating all the matters required to be done, known, or proved on the taking of such acknowledgment.” Section 303 of the Real Property Law states that “An acknowledgment must not be taken by any officer unless he knows or has satisfactory evidence, that the person making it is the person described in and who executed the instrument.”
*726 In the instant case, the acknowledgment merely states that “The foregoing living trust agreement was acknowledged before me on April 12, 1997, by thomas d klosinski, as Trustmaker and Trustee.” The acknowledgment fails to state that the officer taking the acknowledgment knew, or had satisfactory evidence, that the person executing the Trust was the decedent. “[I]t is essential that the officer taking the acknowledgment knows that the person making it is the one described in and who executed the instrument. It follows, therefore, that the certificate of acknowledgment must contain a statement indicating the existence of such knowledge on the part of the official taking the acknowledgment” (1 Warren’s Weed, New York Real Property, Acknowledgments § 3.11, at ACK-28). While no specific words were required by the Real Property Law at that time (compare, Real Property Law § 309-a), the law is clear that “[t]he acknowledgment * * * is defective if it fails to show either that the officer knew or ascertained by satisfactory evidence the identity of the person making the acknowledgment” (id.; see, e.g., Irving v Campbell, 121 NY 353).
There is a split of authority as to whether the failure to acknowledge the pourover trust in accordance with EPTL 3-3.7 renders the trust ineffective, or whether the trust can be effectuated as a common-law pourover trust. In Matter of Dickstein (146 Misc 2d 164), the will provided for the distribution of the residuary estate into a trust that was not acknowledged. The court held that EPTL 3-3.7 was intended to replace prior law, so that any trust not executed in accordance with its requirements was an invalid pourover trust. The opposite result was reached in Matter of O’Brien (165 Misc 2d 459), in which the trust instrument was signed before a notary who witnessed the signature but did not acknowledge it. The court refused to find intestacy. The court noted that EPTL 3-3.7 does not state that the failure to acknowledge causes the pourover trust to fail. Instead, it based its decision on the public policy against intestacy to find that an otherwise valid pourover trust would not be rendered invalid because of the failure to acknowledge the signature.
Prior to the adoption of Decedent Estate Law § 47-g, distribution to a trust established prior to execution of a will, and never amended, was enforceable (Matter of Rausch, 258 NY 327; In re Snyder’s Will, 125 NYS2d 459). “It is one thing to hold that a testator may not import into his will an unattested memorandum of his mere desires and expectations, his *727 unexecuted plans * * * It is another thing to hold that he may not effectively enlarge the subject-matter of an existing trust by identifying the trust deed and the extent and nature of the increment” (Matter of Rausch, supra at 333). Such trusts did not have to be acknowledged, as long as the trust could be clearly identified.
There is nothing in the legislative history that indicates enactment of the predecessor of EPTL 3-3.7 was intended to overturn the case law recognizing these pourover trusts. The statute was stated to be declaratory of the existing law. Its purpose was to provide for full use of pourover trusts and eliminate uncertainty about the use of pourover trusts in circumstances in which the courts had not determined the validity of their use, such as pourover trusts that were amended after execution of the will (2d Report of Temp St Commn on Estates, Rep No. 6.1B, 1963 NY Legis Doc No. 19).
However, we need not reach a determination of whether an improperly acknowledged pourover trust may still be valid if recognizable under prior law. The law is quite clear that a defective acknowledgment may be corrected in a mandamus proceeding (People ex rel. Sayville Steamboat Co. v Kempner, 49 App Div 121). Indeed, if there is sufficient evidence of compliance with the statute, the defect in the acknowledgment may be ignored unless there is a showing of prejudice (Matter of Hazell v Board of Elections, 224 AD2d 806; 1 NY Jur 2d, Acknowledgments § 20, at 246). Whether the requirements for the acknowledgment were met is a question of fact.
Summary judgment may be granted only where it is clear that no triable issue of fact exists (see, e.g., Alvarez v Prospect Hosp., 68 NY2d 320; Phillips v Kantor & Co., 31 NY2d 307). Objectant has failed to meet her burden of showing that the Trust agreement is an invalid pourover trust as a matter of law. Accordingly, objectant’s motion for summary judgment is denied in all respects (CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065; Zarr v Riccio, 180 AD2d 734).

. The third concern was that no trust was created under the doctrine of merger. The fourth concern was that the language of the will made it unclear whether the residuary estate was to be distributed to the trust under such circumstances. These issues are not raised in the instant case (id. at 765).