OPINION OF THE COURT
Edward W. McCarty III, J.
In this probate proceeding, the guardian ad litem appointed *356 for the two minor children of the decedent’s predeceased daughter has filed his report. The guardian ad litem has advised the court that there is an issue as to whether the residuary bequest in the purported will is defective because it pours over into a trust which was not in existence at the time the purported will was executed. Accordingly, the court must determine the effectiveness of the pour-over provision, as well as the guardian ad litem’s fee.
The decedent, Anthony J. D’Elia, died on October 8, 2011, leaving a purported will dated March 22, 2011. The decedent was survived by his wife, Ann, and four children, John, Mary Beth, Anthony and Michael. The decedent also had a daughter, Margaret A. Reynolds, who predeceased him. Margaret’s two minor children, Lindsey Reynolds and Bryan Reynolds, are the guardian ad litem’s wards. The purported will has been offered for probate by the decedent’s son, John, the nominated executor thereunder.
Article III of the purported will provides as follows:
“I give, devise, bequeath, and dispose of all the residue and remainder of my estate, to the Trustee(s) named in THE ANTHONY J. D’ELIA FAMILY TRUST, executed on or before the date of this Will and prior to the execution of this Will, of which I am the Settlor, and my son, JOHN D’ELIA, is the Trustee. I direct that the residue of my estate shall be added to, administered, and distributed as part of that trust, according to the terms of the trust and any amendment made to it before my death. It is not my intent to create a separate trust by this Will or to subject the trust or the property added to it by this Will to the jurisdiction of the probate court.
“If the disposition specified in the previous paragraph of this Article III is inoperative or is invalid for any reason, or if the trust referred to in this Article III fails, is revoked, I incorporate herein by reference the terms of that trust, together with any amendments made thereto executed on or before the date of this Will, without giving effect to any amendments made subsequently; and I bequeath and devise the residue of my estate to the Trustees named in the trust as Trustees, to be held, administered, and distributed as provided in the trust instrument incorporated in this Will.”
No provision is made for the guardian ad litem’s wards in either the purported will or the Anthony J. D’Elia Family Trust *357 (hereinafter the trust). The trust agreement creating the trust provides that upon the settlor’s death, a credit shelter trust is created for the decedent’s spouse, Ann. Upon Ann’s death, the principal of the credit shelter trust is directed to be distributed in accordance with a limited power of appointment given to her. In default of Ann’s exercise of the limited power of appointment, the trust principal is payable to the decedent’s four surviving children named above, per stirpes. The balance of the main trust, after the creation of the credit shelter trust, is payable to the Ann T. D’Elia Family Trust.
The purported will was executed by the decedent on March 22, 2011. The trust was signed by the decedent, as settlor, on March 22, 2011; however, the trustee, John, did not sign the trust agreement until March 29, 2011. Accordingly, the issue raised by the guardian ad litem, and which the court must address, is whether the bequest of the decedent’s residuary estate fails because the trust was not in existence at the time of the execution of the will.
The general rule in New York with respect to incorporation by reference is that “an unattested paper which is of a testamentary nature cannot be taken as a part of the will even though referred to by that instrument” (Matter of Lew, NYLJ, Dec. 2, 2002 at 17, col 1 [Sur Ct, NY County 2002]). There are, however, certain exceptions created by statute to the general rule prohibiting incorporation by reference. EPTL 3-3.7 permits a testator to make a pour-over bequest to a trust in a will “provided that such trust instrument is executed in the manner provided for in 7-1.17, prior to or contemporaneously with the execution of the will, and such trust instrument is identified in such will.”
Under certain circumstances, even in the absence of a statutory exception, the courts have deviated from a strict application of the rule where “adequate safeguards” are employed so that the doctrine is not carried to “a drily logical extreme” (Matter of Ivie, 4 NY2d 178, 182 [1958]). If the “opportunity for fraud is for all practical purposes eliminated, the testamentary provision may be upheld” (Matter of Ivie, 4 NY2d 178, 181 [1958]; see also Matter of Fowles, 222 NY 222, 233 [1918]). As Judge Cardozo stated in Fowles, the rule against incorporation by reference “is a rule designed as a safeguard against fraud and mistake” (Matter of Fowles, 222 NY 222, 232 [1918]).
Incorporation by reference has been permitted by some courts where the receptacle trust was not properly acknowledged (Mat *358 ter of O’Brien, 233 AD2d 561 [3d Dept 1996]). In Matter of O’Brien (233 AD2d 561 [3d Dept 1996]), the Third Department found that the trust agreement was not acknowledged in accordance with the dictates of EPTL 3-3.7; however, the Court held that the charitable residuary bequest would not lapse because there was no evidence of fraud. Moreover, the Court recognized the “presumption against intestacy with respect to residuary bequests and the principle that, where the testator seeks to leave money for a charitable purpose, a liberal construction of the terms of a will should be given in order to uphold it and validate the bequest” (Matter of O’Brien, 233 AD2d 561, 562 [3d Dept 1996]). Accordingly, even though the notary did not endorse a certificate of acknowledgment, the pour-over provision was given effect. In Matter of Dickstein (146 Misc 2d 164 [Sur Ct, Westchester County 1989]), however, where neither the grantor’s nor the trustee’s signature was acknowledged, a contrary result was reached. The court in Dickstein held as follows:
“EPTL 3-3.7 is clear and explicitly requires that the inter vivos trust instrument be executed and acknowledged by the parties thereto. It is conceded by all the parties hereto that the inter vivos trust was not acknowledged by any of the parties thereto. Thus, the unavoidable conclusion is that the pour-over bequest under article V A of the will is a failed disposition and is invalid.” (Matter of Dickstein, 146 Misc 2d 164, 166 [Sur Ct, Westchester County 1989].)
In Matter of Klosinski (192 Misc 2d 714 [Sur Ct, Kings County 2002]), the court denied a motion for summary judgment on the issue of the objectants’ contention that the trust was an improper pour-over trust and incapable of receiving the residuary estate under the decedent’s will. The objectant claimed that the trust document was not executed in accordance with EPTL 3-3.7. The court observed that the acknowledgment failed to state that the notary knew, or had satisfactory evidence, that the person executing the trust was the decedent. The court recognized that the courts were split as to whether the failure to acknowledge a receptacle trust in accordance with EPTL 3-3.7 rendered the trust ineffective; however, the court stated that a defective acknowledgment could be corrected in a mandamus proceeding and even could be ignored if there was sufficient evidence of compliance with the statute. Because determination of the issue was a question of fact, the court denied the motion for summary judgment.
*359 In Matter of Bourcet (175 Misc 2d 144 [Sur Ct, Nassau County 1997]), this court was faced with the issue of whether a pour-over provision to an unfunded trust was defective. In Bourcet, the decedent executed a trust agreement that was unfunded prior to her death. The objectant argued that the trust was an invalid receptacle of the decedent’s residuary estate because the trust agreement was not acknowledged and was not funded prior to the decedent’s death. The court relied upon the Second Report of the Temporary Commission on Estates, which preceded the enactment of Decedent Estate Law § 47-g (the predecessor to EPTL 3-3.7). The Commission recommended that pour-overs be permitted into unfunded trusts, and the report stated as follows:
“ ‘It is recommended that New York enact one or more “pour-over” statutes permitting a testator to devise, bequeath or appoint property ... to the trustee of an inter vivos trust . . . Such statute should permit the recepta[c]le trust to be amended . . . and such trust need not be funded, it being sufficient in the case of a “pour-over” to an inter vivos trust that the instrument creating the trust be in existence at the date of the execution of the will and identified therein’ (2d Report of Temp St Commn on Estates, 1963 NY Legis Doc No. 19, at 287)” (Matter of Bourcet, 175 Misc 2d 144, 146 [Sur Ct, Nassau County 1997]).
Based upon the legislative history, this court held that the bequest that poured over into an unfunded trust was effective. In addition, this court found that the trust at issue was, in fact, acknowledged in accordance with the statutory requirements.
Here, the issue is whether the failure of the trustee to sign the trust instrument prior to or contemporaneously with the purported will means the trust was not in existence in accordance with EPTL 3-3.7. To create a valid trust under New York law, four elements are essential: (1) a designated beneficiary; (2) a designated trustee, who is not the same person as the beneficiary; (3) a clearly identifiable res; and (4) delivery of the res to the trustee with the intent of vesting legal title in the trustee (3 Warren’s Heaton, Surrogate’s Court Practice § 46.01 [7th ed 2006]).
In Matter of Gold (2002 NY Slip Op 40383[U] [Sur Ct, Kings County 2002]), the issue before the court was whether a trust created in 1996 was void ab initio for lack of a trustee. The court noted that under the law as it existed in November 1996, *360 the trust was a valid trust. To show the existence of a trust at that time, the trustee was not required to sign the trust agreement. With the enactment of EPTL 7-1.17 in 1997, however, certain formal requirements were imposed for the creation, amendment and revocation of lifetime trusts (Fasano v DiGiacomo, 49 AD3d 683 [2d Dept 2008], lv denied 11 NY3d 710 [2008]). The court in Fasano noted that
“ ‘[u]ntil the passage of this statute in 1997, New York, a state with strict and rigid requirements for wills . . . did not have any formal requirements for lifetime trusts’ (Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 7-1.17, at 334). In enacting the statute, the Legislature recognized that ‘[s]ome degree of formality helps the parties involved realize the serious nature of the instrument being executed and reduces substantially the potential for foul play’ (Senate Introducer Mem in Support, Bill Jacket, L 1997, Ch 139, at 8)” (Fasano v DiGiacomo, 49 AD3d 683, 684-685 [2d Dept 2008]).
In Fasano, it was undisputed that the trust agreement was never executed by the designated trustee in accordance with EPTL 7-1.17 (a). Accordingly, no trust was created.
Here, the trust was signed by the decedent as settlor on March 22, 2011 contemporaneously with or prior to the execution of his purported will. The trustee, however, did not sign the trust agreement until March 29, 2011. Thus, the trust was not in existence at the time the will was signed. Indeed, after the enactment of EPTL 7-1.17, one commentator noted that the more formal requirements for execution of lifetime trusts would have an impact on the execution of a trust designated as a receptacle for a pour-over will and stated as follows:
“Under new EPTL 7-1.17, a lifetime trust created after Dec. 24 will not be valid if it is not (1) in writing and (2) executed by the required parties as though for recording a deed or, alternatively, before two witnesses who shall affix their signatures to the trust instrument. The formalities for recording a deed are set by RPL § 291 et seq., and are most commonly satisfied by due acknowledgment before a notary public. . . .
“The ‘required parties’ are the initial trust creator, plus at least one trustee if the creator is not the sole trustee. In this connection, EPTL 3-3.7 requires *361 that a trust that will receive a pour-over from a will must be executed in this required manner prior to or contemporaneously with the will. It therefore may not suffice for the testator to sign her will and trust and then send the trust out to the trustee for acceptance” (Jon L. Schumacher, Important New Trust Rules Enacted in 1997, NYLJ, Jan. 27, 1998 at S10).
Although mindful that the benefits of estate planning on the decedent’s part may be affected by finding the pour over invalid, the unavoidable result is that the residuary bequest under the decedent’s purported will fails as the trust was not in existence at the time the purported will was executed. The default provision in the second paragraph of article III is likewise ineffective as a further failed attempt to incorporate by reference the provisions of the trust. The residuary estate shall pass pursuant to the rules of intestacy (EPTL 4-1.1).
With respect to the guardian ad litem’s fee, the guardian ad litem has submitted an affidavit wherein he states that he spent more than 24 hours on this matter. His usual hourly rate is $450 per hour. The services rendered by the guardian ad litem include: reviewing the court’s file; communicating with the father of his wards and the attorney-draftsman; interviewing the witnesses to the will; and preparing his guardian ad litem report. According to the probate petition, the value of the testamentary estate is $190,000. Considering all of the factors used to determine the reasonableness of fees as enunciated in Matter of Potts (123 Misc 346 [Sur Ct, Columbia County 1924], affd 213 App Div 59 [4th Dept 1925], affd 241 NY 593 [1925]) and Matter of Freeman (34 NY2d 1 [1974]) and bearing in mind that the size of the estate can operate as a limitation on the fees payable (Matter of McCranor, 176 AD2d 1026 [3d Dept 1991]; Matter of Kaufmann, 26 AD2d 818 [1st Dept 1966], affd 23 NY2d 700 [1968]), without constituting an adverse reflection on the services provided, the court fixes the fee of the guardian ad litem in the amount of $2,500.