**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report: January 23, 2018
Draft Report: January 10, 2018
Date Submitted: December 1, 2017

Darryl Rago, Esquire
Leager & Rago, LLC
1401 Pennsylvania Avenue Suite 101
Wilmington, DE 19806

RE: IMO *Theodore Brans*
C.A. 2017-0851-PWG

Dear Mr. Rago:

Pending before me is a petition for instructions pursuant to Court of Chancery Rule 207 filed by co-executors and heirs, Martin Brans ("Martin") and Ingrid Yerger ("Ingrid"), of the Last Will and Testament of Theodore J. Brans (hereinafter "Will"). Petitioners request that the Court order that the real property of Theodore J. Brans (hereinafter "the decedent") pass to the heirs as non-probate property for purposes of accounting because the provision within the Will pertaining to the distribution of the decedent's real estate was vague, ambiguous and subject to interpretation, the decedent's intent was for both heirs to be treated equally, and it is impossible to perform the requirements related to distribution of

the decedent's real property under the Will.  I recommend that the Court decline to provide the instructions recommended by the Petitioners.

BACKGROUND

On February 25, 2014, the decedent executed an amendment to a revocable trust agreement executed on October 17, 2008 (hereinafter "Revocable Trust"), which amended and restated the Theodore J. Brans Revocable Trust established on February 8, 1993.[1]  That amendment revoked section three in its entirety and replaced it with the following new section three:

> At the death of the Trustor, the principal of this trust shall be distributed as follows:
>
> A. The principal of this Trust shall be distributed to my children, MARTIN BRANS and INGRID YERGER in equal shares.
>
> B. In the event that MARTIN BRANS or INGRID YERGER predeceases the Trustor and leaves issue of his or her own surviving, then that child's share shall be distributed in equal shares to his or her surviving issue.  In the event that MARTIN BRANS or INGRID YERGER predeceases the Trustor without leaving issue surviving, then that child's share shall be distributed to Trustor's surviving child per stirpes.

The decedent executed the Will at issue in this petition on February 8, 2016, appointing Martin and Ingrid as co-executors of the Will.  Paragraph 5 of the Will provides:

---

[1] Pet. for Instructions, Exh. E (Amendment to the Theodore J. Brans Revocable Trust dated Feb. 8, 1993 and entered into on Oct. 17, 2008)(Feb. 25, 2014).

FIFTH: I direct that my residence and property at 38407 Boxwood Terrace, Selbyville, Delaware (hereinafter "the property") be handled as follows:

Subsequent to my death, my Co-Executors shall mutually agree upon a licensed appraiser to determine the fair market value of the property. The cost of the appraisal shall be paid by my estate. Upon receipt of the appraisal, MARTIN BRANS shall have fifteen (15) days to decide whether he wishes to retain the property. Should MARTIN BRANS decide to retain the property, he shall pay INGRID YERGER one-half (1/2) of the appraised value of the property. Said payment shall be due within eight (8) months of my date of death. In the event that my son, MARTIN BRANS, shall elect not to retain the property, my daughter, INGRID YERGER, shall have fifteen (15) days from the date she receives notice that MARTIN BRANS does not intend to purchase the property, to decide whether she wishes to retain the property. If INGRID YERGER wishes to retain the property, she shall pay MARTIN BRANS one-half (1/2) of the appraised value. Said payment shall be due within eight (8) months of my date of death. If neither MARTIN BRANS nor INGRIG [sic] YERGER wishes to retain the property, I direct, order and instruct my Co-Executors to sell the property. The proceeds shall become part of the rest, residue and remainder of my estate.

The Will's residuary clause identifies the Revocable Trust as the vehicle for disposing of the residuary estate:

SIXTH: All the rest, residue, and remainder of my property and estate of whatever kind and wherever situated and of which I might die seized and possessed or to which I may be in any manner entitled at the time of my death, I give, devise and bequeath absolutely to the trustee(s) of the THEODORE J. BRANS REVOCABLE TRUST AGREEMENT DATED FEBRUARY 8, 1993, AS AMENDED AND RESTATED OCTOBER 17, 2008, and any amendments thereto, to be held and administered in accordance with the terms and provisions of said Trust Agreement.

The decedent passed away on March 27, 2016, and the decedent's estate was opened on April 8, 2016. Since the decedent's wife predeceased him, Martin and Ingrid (or "Petitioners") are co-executors and heirs of the estate, and successor trustees of the Revocable Trust.

Petitioners wish to take the decedent's real property at 38407 Boxwood Terrace, Selbyville, Delaware (hereinafter "the property") together jointly. They allege they discussed this goal with the estate's former counsel, who told them that Paragraph 5 of the Will did not allow them to take the property jointly without incurring probate fees, and that the Will gave them 15 days following the decedent's death to decide if one of them wanted to keep the property before it would be subject to sale.[2] Petitioners allege they voiced concerns to former counsel about his interpretation of Paragraph 5, but went ahead and obtained an appraisal of the property on April 27, 2017, which valued the property at $410,000. Petitioners met with former counsel on July 28, 2017 to discuss their concerns, and following that meeting, counsel withdrew from representation of the estate by letter dated August 17, 2017.

Petitioners obtained new counsel and were granted an extension for filing the estate's accounting until January 8, 2017. On November 29, 2017, they filed this action in which they are asking the Court to order that the decedent's real property pass to them as non-probate property for purposes of accounting.

ANALYSIS

Paragraph 5 of the Will contains five conditions related to the decedent's real property – three of which must be met within specified time frames. First, the Will required Martin and Ingrid to get an appraisal of the property from a mutually agreed upon appraiser after the decedent's death. There is no time frame for obtaining that appraisal. Next, the Will gives Martin 15 days after the appraisal is received to decide if he wishes to retain the property. If Martin declines to keep the property, Ingrid has 15 days after receiving notice of Martin's decision to decide whether she will retain the property. If either one keeps the property, then they must pay the other for their share of the property within eight months of the decedent's death. If neither Martin nor Ingrid retain the property, Paragraph 5 of

---

[2] The email from the former counsel states, in part, that "With regard to the probate tax, the Will specifically states that you each had 15 days following your father's death to decide to purchase the property; otherwise, it was to be sold to a third party. Per Delaware law, the sale proceeds would be subject to the DE probate tax of 1.25%. You are free to retain the home but the Register of Wills will still require that they receive 1.25% of the FMV of the home. To that end, we will need to have the home appraised . . ." Pet. for Instructions, Exh. A, Email from M. Robinson to I. Yerger (Apr. 25, 2017).

the Will directs that the property be sold, with the proceeds from the sale becoming part of the residuary estate. There is no time frame specified in the Will related to the fifth condition – the sale of the property.

Petitioners argue that Paragraph 5 of the Will is vague, ambiguous and subject to interpretation. Petitioners assert that the last sentence of Paragraph 5 stating that "if neither MARTIN BRANS nor INGRID YERGER wishes to retain the property," when read in conjunction with the rest of Paragraph 5, allows for an implied third option that the heirs can take the real property together as non-probate real estate. They argue that the decedent appointed Martin and Ingrid to act jointly as co-executors of the estate and intended for both heirs to be treated equally, which contravenes an interpretation that they could not jointly take possession of the property under the Will. Further, they allege an ambiguity exists because the Will fails to address the situation where both heirs want to keep the property jointly. They also claim that, if the Court finds no ambiguity, then the proceeds from the forced sale of the property would be distributed through the residuary clause of the Will and, since that clause names a "dead instrument, the Revocable Trust, as taker with no alternative taker," the result would be an "invalid devise."[3]

---

[3] Pet. for Instructions, ¶ 24.

The Court of Chancery follows two principles in reviewing a will upon a petition for instructions: "1) where the language of a will is unambiguous, the court must enforce its terms as written," and "2) where the language used in a will is ambiguous, the court must give the language that meaning which will effectuate the intent of the testator."[4] If the language of a Will is "clear and readily understandable," extrinsic evidence is not considered.[5] Clear intent, as expressed, is enforced, unless against legal policy.[6] Ambiguity exists "when the terms in question are reasonable or fairly susceptible of different interpretations or may have two or more different meanings."[7] And, if a mistake was made in writing a will, the Court of Chancery does not have the "power to correct a mistake, and it cannot, by introduction of parol evidence, rewrite the [will]."[8]

The language in Paragraph 5 of the Will is not ambiguous or vague. It expresses the decedent's clear intent and lays out a process by which either Martin, who has the first option, or Ingrid, with the second option, can keep the house by

---

[4] *In re Will of Fleitas*, 2010 WL 4925819, at *4 (Del. Ch. Nov. 30, 2010), citing *In re Estate of Skwarlo*, 2001 WL 312451, at *1 (Del. Ch. Mar. 12, 2001).

[5] *See Miller v. Equitable Trust Co.,* 32 A.2d 431, 434 (Del. 1943)(holding the Court is bound to follow the clear intent if the expression is "plainly discernible from the language employed, and in such cases surrounding facts and circumstances can be of no importance"); *Bird v. Wilmington Soc. of Fine Arts,* 43 A.2d 476, 480 (Del. 1945)("[i]t is not the function of the Court to make a will for the testator or to improve on the will as found," and "to give to the language of the testator an intent not discernible from the will itself or from the surrounding circumstances"), citing *Miller,* 32 A.2d at 434.

[6] *IMO Estate of Kenton*, 1994 WL 698640, at *1 (Del. Ch. Oct. 21, 1994).

[7] *Fleitas,* 2010 WL 4925819, at *5 (citation omitted).

buying out the other. I find the argument that the Will is ambiguous because it does not address the situation which Martin and Ingrid want to happen – that they keep the house jointly – unpersuasive. There is no evidence that the decedent intended for Martin and Ingrid to be able to keep the property jointly through the probate process. In fact, the opposite is true – the Will lays out a detailed process which does not include that option. Considering the statement "[if] neither MARTIN BRANS nor INGRID YERGER wishes to retain the property, [then the property is sold]" in light of Paragraph 5 as a whole, I interpret that language as addressing what happens if both Martin and Ingrid decide not to avail themselves of their individual options. I do not construe the language in Paragraph 5 as intending to offer a third, unstated option – that Martin and Ingrid can retain the property together. As the Supreme Court opined in *Bird v. Wilmington Soc. of Fine Arts,* it is not the role of the Court "to improve on the will as found."[9] So, I cannot rewrite or otherwise impute meaning into the Will to address the Petitioners' desired option of jointly possessing the property.

Petitioners further contend that the Will's residuary clause is void because it names a "dead instrument, the Revocable Trust, as recipient of the residuary estate

---

[8] *Id.*
[9] 43 A.2d at 480.

and no alternative taker."[10]  They argue that the Revocable Trust is a "nullity" because it dissolves and is distributed at the decedent's death, terminating the trust and "any 'pour-over' assets do not escape the Will and remain residual."[11]  It is their view that the residuary clause lapses, rendering Paragraph 5's provision related to the sale of the property invalid because there is no place for the sale proceeds to go.[12]  Petitioners' argument fails.  The case cited by Petitioners, *Matter of Hobson's Estate*, is distinguishable.  In that case, the Will contained no residuary clause and the specific devise in the Will – real and personal property at a certain location – had been disposed of during the testator's lifetime.[13]  The *Hobson* Court held that the specific legacy became inoperative when the property was sold prior to the testator's death and, without a residuary clause, the estate assets would go to the heirs or next of kin "as in the case of intestacy."[14]  Contrary to *Hobson*, the Will in this case contains a residuary clause and the real property designated as a specific devise remains to be distributed under the Will.

If a trust, by its terms, terminates at the decedent's death, it does not mean that there is no trust capable of receiving the residuary estate.  The duties and

---

[10]  Pet. for Instructions, ¶ 24.
[11]  *Id.*, ¶ 27.
[12]  *Id.*, ¶ 24.
[13]  *Matter of Hobson's Estate*, 456 A.2d 800, 802 (Del. Ch. 1982).
[14]  *Id.* at 803.

powers of trustees do not immediately cease at the termination of the trust because the trustees must take the necessary steps to wind up the trust, which include collecting and distributing the trust assets.[15]  In this case, the Revocable Trust provides that, at the death of the decedent, the trust principal was to be distributed to Martin and Ingrid in equal shares.  Martin and Ingrid, as alternate successor trustees, have the responsibility of winding up the trust affairs and their duties include collecting and distributing the trust assets according to the terms of the trust document.   And, given that the Revocable Trust was in place and not modified subsequent to the execution of the Will, it is clear that the decedent intended to dispose of his residuary estate through the Revocable Trust.  So, the winding up of the Revocable Trust requires collecting and distributing all trust assets, including any assets remaining in the residuary estate.  Accordingly, I find Petitioners' argument that the Revocable Trust's change in status at the decedent's death invalidates Paragraph 5 unconvincing.

Petitioners also argue that the property was transferred into the Revocable Trust prior to the decedent's death because they assert the trust property includes "any other property Trustee may hereafter at any time hold or acquire."[16]  In fact, the Revocable Trust provides that additional property may be transferred to the

---

[15] *E.g., In re Klosinski*, 746 N.Y.S.2d 350, 358 (N.Y. Sur. 2002); *Matter of Estate of Herrig*, 471

trust, including any property that the trustee "may hereafter at any time hold or acquire hereunder, in trust . . . ."[17] To become trust property prior to the transfer through the Will's residuary clause, the property would need to be deeded to the Revocable Trust. In the absence of any evidence that the property was deeded this way, I conclude that the property remained in the decedent's estate at the time of his death.

Petitioners also contend that the Court should interpret the Will to allow the property to pass to them jointly outside of probate because they were "equal takers" of the trust and are the first class of heirs, who "would take equally outside of probate under all other statutory and common law mechanisms."[18] The property passes under the Will, not through any other means, so the Will controls. Although Petitioners generally receive equal financial benefits under the Will, Paragraph 5 does not give them "equal" options to keep the property as evidenced by Martin's first priority to keep the property.

Petitioners claim an impossibility of performance under the Will because they assert Paragraph 5 commands that "the property be sold" within eight months of the decedent's death, but the heirs cannot validly exercise their options to retain

N.Y.S.2d 809 (N.Y. Sur. 1984).
[16] Pet. for Instructions, ¶ 29.
[17] *Id.*, Exh. H, § 1 (Trust Estate).
[18] *Id.*, ¶ 30.

the property until after the closing of the eight-month period following the decedent's death for creditors to submit their claims. First, the Will does not mandate the sale of the property under Paragraph 5 within eight months of the decedent's death. It does provide that if either Martin or Ingrid decides to retain the property that they have to pay the other for their share within eight months. If the conditions in Paragraph 5 related to passing the property to either Martin or Ingrid are not met, then the property is sold. But there is no time frame specified for that sale to occur. Second, Delaware law provides that if legacies are paid out before one year following the personal representative's appointment or if, at the time they are paid out, there are not sufficient assets in the estate to cover its outstanding or potential obligations, then the person receiving the legacy may be required to provide security.[19] In this case, any concerns about sufficient funding in the estate for claims filed after the delivery of the property and the pay-off to either Martin or Ingrid under the Will could have been addressed by requiring them to provide security as a condition of receiving the property or the pay-off. And, if the property had been sold prior to the completion of the eight-month claim period, the funds from that sale would remain in the estate to use for the estate's debts prior to distribution under the residuary clause.

---

[19] 12 *Del. C.* § 2312.

Petitioners also assert that the estate's former counsel failed to advise them concerning the proper application of the 15-day time frame in Paragraph 5, that they could take the property through other legal mechanisms, including disclaimer, or that either could elect to accept a one-half interest in the whole of the real estate as alternative compensation to a specific cash devise of one-half of the appraised value of the realty. Although the advice given by the estate's former counsel may have affected the Petitioners' actions with regard to the conditions in Paragraph 5 of the Will, I do not find that the attorney's actions in this case demonstrate a scrivener's error or mistake in the language of the Will, contrary to the testator's intent, that would support reformation of the Will.

The real issue is whether the property can pass outside of probate to avoid the probate tax on the value of the property. The decedent created a testamentary approach which allowed one of his heirs to take possession of the property if they followed the specific conditions set forth in Paragraph 5 of the Will, thereby avoiding the probate tax. I have found that there is no ambiguity in the terms of the Will as to the conditions that must be met. The triggering event in Paragraph 5 is the obtaining of an appraisal by a mutually agreed upon appraiser. Once they received the appraisal then the remaining conditions commenced – either Martin, or Ingrid (if Martin didn't), had the option to keep the property if they adhered to

the time frames in the Will to make that decision and then paid one-half of the property value to the other sibling within eight months from the decedent's death. Under these provisions in Paragraph 5, the property would pass to one of them, and the other would receive their share of the value, without the need to pay probate fees on the property.[20] Martin and Ingrid wish to jointly take possession of the property, which was not an option provided for under Paragraph 5. They failed to meet the conditions set out in Paragraph 5 and, if that occurred, the Will directs that the property be sold and the assets pass through the residuary estate, which would result in the assessment of probate taxes on the sale proceeds.[21]

Petitioners, who serve as co-executors of the Will, the only beneficiaries under the Will, and co-trustees of the Revocable Trust, agree concerning how they would like the decedent's estate plan to be effectively rewritten. It may appear, at first glance, harmless to allow the reformation or modification of a will or trust if all of the beneficiaries are in accord. However, in Delaware, the dead settlor's

---

[20] I make no comment on whether, following that approach, there may have been other tax implications not related to probate taxes.

[21] Paragraph 5 of the Will does not specify any requirements as to the sale process – or limitations concerning who could purchase the property.

intent prevails over the wishes of the living beneficiaries.[22]   In this case, the decedent's intent is clearly expressed in the language of his Will and controls, preventing the Petitioners' requested instruction.

CONCLUSION

For the foregoing reasons, I recommend that the Court deny the petition for instruction requesting that the Court enter an order that the decedent's property passes to his heirs, Martin and Ingrid, as non-probate property for purposes of accounting.

Sincerely,

/s/  Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

PWG/kekz

---

[22] *See In re Tr. Under Will of Flint for the Benefit of Shadek*, 118 A.3d 182, 194 (Del. Ch. 2015)(it is "the policy of the State of Delaware 'to give maximum effect to the principle of freedom of disposition and to the enforceability of governing instruments.' 12 *Del. C.* § 3303(a). It would undercut this policy, and might well be described as duplicitous, for our State to represent to a settlor that our law will respect his dispositions and enforce his governing instrument, only to enable his beneficiaries to rewrite that instrument after his death.")