John M. Keane, S.
Domestic animals have long been favored companions of man and have eased the burdens of his labors. So much so, that from time to time men blessed with worldly goods seek, in a last will and testament, to grant some benefit to a particular animal or animals in general. Whether they act from love of animals or hate of men, litigation often ensues after their death.
Even an animal hater probably would not complain if the bequest to benefit a dog was, figuratively, only a bone. But when the bequest is substantial and, figuratively, a whole quarter *37 of beef, then even those who otherwise profess to like dogs often complain about the provisions of such a will.
Concern for those of the animal kingdom has long beer regarded as charitable in nature. In these days when testators are very tax conscious to lessen the share paid to the sovereign on departure from this life, it is comforting to many that the sumptuary laws permit bequests for the benefit of animals to be used in toto with no diminution by reason of estate taxes.
Those heirs or beneficiaries who survive a testator whose bounty in a large part was bestowed on members of the lower orders at the expense of the heirs or beneficiaries, often come into court and question the competence of one making such a will. No such claim about competence was made when the last will and testament of Eleanor K. Hill was offered for probate and subsequently admitted to probate. The value of her estate is estimated to be $225,000. Her will provided general legacies to individuals of only $5,500. Of this sum only $2,500 was payable because .some beneficiaries had predeceased the testatrix.
In the disposition of the residue of her estate, she gave 25% to the Blind Work Association and 50% to Our Lady of Lourdes Memorial Hospital, Inc., both well-known charitable organizations in Binghamton.
It is the disposition of the other 25% of the residue that has been questioned and about which a construction of the language of the will has been sought. The paragraph in question is as follows:
“ THIRD. * * *
‘ ‘ b. One-quarter to my executor hereinafter named to hold the same in trust and pay it over to a corporation to be formed as soon as possible, such corporation to be charitable by nature and to have for its purpose the providing of shelter and care for homeless domestic animals of all kinds while new homes are being sought for them and every effort is being made to provide for such new homes, no such animal to be disposed of unless suitable quarters can be found and no animal to be killed except that it be found impossible to procure a new home for it within a reasonable time and then only to make room for other stray animals; and I direct said executor and trustee to form such corporation with the guidance and help of Dr. John La France and, as soon as such corporation is duly organized, my executor and trustee is directed to pay over said one-quarter of my residuary estate to it absolutely, to be used in the furtherance of its corporate purposes.”
*38 Some distributees of the decedent contend that the disposition in paragraph “ third (b) ” is invalid on several grounds and for those reasons the bequest should pass to the distributees as in intestacy.
Canons of construction are guides to direct the thought of the court in construing language of a will about which there is disagreement. No citation of authority is required to support the canon that the primary function of the court is to ascertain the intent of the testatrix as shown in the instrument under consideration. Another canon states that a court is reluctant to find intestacy when a person died testate. Sometimes this is the only conclusion possible but it is a determination reluctantly made.
Assuming, arguendo, that Dr. John La France had survived the testatrix herein, this court determines that the provision in paragraph “ third (b) ” is a valid charitable disposition. The general nature of the bequest herein is similar to that in Matter of Hamilton (185 Misc. 660, affd. 270 App. Div. 634, affd. 296 N. Y. 578). The comprehensive decision of the Surrogate therein makes unnecessary a review here of the applicable law. This court concurs in the reasoning and in the result reached in the Hamilton case. Did the death of Dr. John La France prior to that of the testatrix so shatter her testamentary disposition in paragraph “ third (b) ” that the bequest must pass as in intestacy to the decedent’s distributees'?
The primary attack by the distributees is directed to the fact that Dr. John La France predeceased the testatrix. It is their contention that without the presence of Dr. John La France the intention of the testatrix concerning the formation of a charitable corporation is incapable of fulfillment.
Dr. John La France at the time of the execution of this will in 1944 was a practicing veterinarian in Binghamton. Information has been submitted to the court by the attorneys for one distributee that Dr. John La France and his wife were tenants of decedent and her husband at 456 Chenango Street, Binghamton, New York from 1932 to 1937. In the latter year, decedent and her husband moved next door to 460 Chenango Street. From the same source material, the court in its own investigation lias learned that Dr. John La France prior to 1939 moved away from 456 Chenango Street. The information furnished by the attorneys for the one distributee undoubtedly was given to show a friendly relationship. The information furnished to the court was like an incomplete quotation. While advocacy is the duty of counsel, it is not aided by submission of incomplete factual material.
*39 The will itself shows that decedent thought well of Dr. John La France and his family. She gave them $1,500 out of the $5,500 of general bequests. In paragraph “ second (d) and (e) ” decedent made provision for the contingency that Dr. John La France might predecease her. Records in this court show that Dr. John La France died intestate on August 25, 19G2, less than a year before the testatrix herein who died on May 8,1963.
Briefs of counsel for the distributees, including the special guardian, are replete with references to a “ special and particular type of home and care and not just any operation for the shelter and care of homeless animals.” Just what did the testatrix say?
The whole paragraph must be read, not just parts. It consists of two long sentences. The first sentence provides generally for the payment of the bequest to a corporation to be formed for the purpose to shelter and care for homeless domestic animals. The second sentence provides for the formation of the corporation “with the guidance and help of Dr. John La France.” After the corporation is so formed, the executor and trustee is directed to turn over the bequest to it.
This is not a homemade will prepared by one unskilled in the preparation of wills. Earlier in the will, references are made to the possible death of Dr. John La France before the testatrix and gifts over are made. No such language is found here. If this corporation was to be absolutely dependent upon the presence of Dr. John La France at the time of its formation and thereafter, testatrix would have said so. If the bequest were to fail by reason of his earlier death, would not it seem logical that the draftsman would provide for a gift over?
It is true that the language is imperative to the executor and trustee concerning the “guidance and help” of Dr. John La France upon the formation of the corporation. However, the court does not read any language which would indicate that the testatrix intended to create something unique that existed only in the mind of Dr. John La France. Reading the whole paragraph, this court concludes that a valid charitable bequest was made despite the death of Dr. John La France before the testatrix.
To support the conclusion reached on the validity of paragraph “ third (b) ”, attention is called to the entire will. The intent of the testatrix was to make a disposition of substantially her entire estate for charitable purposes. Not one distributee was the object of her bounty. A determination that *40 would divert 25% to first cousins would not be supported when the entire will is read.
Counsel for the distributees also argue that, even if the disposition is valid, the funds available are insufficient to carry out the intent of the testatrix. To a certain degree such an argument is conjectural at this point in the administration of the estate. From the facts before it, the court can assume that insufficient funds exist to erect and maintain a building. However, the will of the testatrix does not direct the erection of a house and shelter. The will directs providing shelter and care. This can easily be done by contractual arrangement with the Broome County Humane Society which renders a similar service under contract to the City of Binghamton or a similar organization. The desire of the testatrix is to provide shelter and care for homeless domestic animals. How this can best be done is more a practical than a legal matter.
In answer to the request of the executor concerning the formation of the charitable corporation, the executor and trustee is permitted to do so to carry out the charitable purposes set forth in paragraph “ third (b) ”.
The executor has also sought advice as to application of the doctrine of cy pres. The court determines that consideration of that doctrine is premature at this time. At the time of a final accounting when the amount of the bequest is known, the petitioner can renew his application. However, the court will not usurp the duties and obligations inherent in the operation of a charitable corporation and relieve those responsible from making the decisions which are properly theirs.
Submit decree in accord with decision.