OPINION OF THE COURT
Bernard L. Reagan, J.
Fern Herrig, the decedent, on June 16, 1981, created an inter vivos trust. The trust agreement provided that the income and so much of the principal of the trust as the trustee (Merchants National Bank and Trust Company of Syracuse), in its sole discretion, saw fit from time to time to be paid to the settlor — the decedent, Fern Herrig.
The settlor reserved the right to amend the trust.
Pursuant to the power to amend the trust, the trust was amended once on September 28, 1981.
Fern Herrig died testate June 20, 1982. Her will, executed on September 28, 1981, recited in article second: “second All of the rest, residue, and remainder of my estate, of whatever kind and wherever situated, I give, devise, and bequeath to the Merchants National Bank and Trust Company of Syracuse, Syracuse, New York, as Trustee under a certain Trust Agreement executed by me on July 16,1981. Said bequest shall be added to the principal of such Trust as a part thereof and as the same may have been amended from time to time, to be held, administered, and distributed in accordance with all of the terms, conditions, and limitations set out in said Agreement.”
*741 The trust agreement above referred to, dated July 16, 1981, states in part: “Unless sooner terminated as provided herein the Trust created herein shall terminate upon the death of the Grantor; and upon the happening of such event-the Trustee shall hold and dispose of the principal and any accrued and undistributed income of the Trust Estate as follows”.
The guardian ad litem raises two questions:
(1) That the incorporation by reference of the trust agreement is in violation of the statute on wills.
(2) Since the trust agreement terminates upon the death of the settlor there is no trust for the residuary clause in the will to pour over to.
The court will address the above two questions in order.
The general rule is extrinsic documents not executed in the same manner as a will may not be incorporated by reference (Matter of Rausch, 258 NY 327, Ann., 80 ALR 98) but the rule will not be carried to a “‘drily logical extreme’” (Matter of Ivie, 4 NY2d 178, 182).
An exception to the rule against incorporation by reference has been created to permit a pour over from a will to a trust created by the testator or another, provided that the provisions of EPTL 3-3.7 are complied with.
A plain reading of the inter vivos trust agreement with its one amendment appears to comply with EPTL 3-3.7 (subd [a]) and 3-3.7 (subd [b], par [3]), and the court so finds.
The second question the guardian raises is more novel. He claims since the settlor explicitly sets forth the trust is to terminate at the time of her death that there is no trust for the residuary to pour over into, therefore, there is an intestacy.
It is hornbook law that a will is to be construed if possible so as to avoid intestacy (Waterman v New York Life Ins. & Trust Co., 237 NY 293; Matter of Winburn, 265 NY 366; Matter of Hill, 45 Misc 2d 36).
In the case at bar the problem with the wording is not in the will, but in the trust agreement. However, the court has found in answer to question number one above that the *742 trust agreement conforms to EPTL 3-3.7 and its pertinent subdivisions, and is incorporated by reference into the will. The court, therefore, in construing the will and the trust agreement, applies the same test that is applied in the construction of a will.
In any construction proceeding, the primary rule is that an instrument should be interpreted to reflect the intention of the maker. This intention is not to be gleaned by focusing upon any one sentence or provision, but must be ascertained from an examination of the entire document (Matter of Jones, 38 NY2d 189; Matter of Kosek, 31 NY2d 475; Matter of Flyer, 23 NY2d 579; Matter of Thall, 18 NY2d 186; Matter of Dammann, 12 NY2d 500; Matter of Larkin, 9 NY2d 88; Matter of Fabbri, 2 NY2d 236). In reading the words used, the circumstances surrounding the testatrix at the time of execution may be considered (Matter of Larkin, supra; Matter of Brew, 7 AD2d 364; Matter of Lutz, 202 Misc 903).
If the court, upon reading the will in this setting, discerns a dominant purpose or plan of distribution, the individual parts of the will must be read in relation to that purpose and given effect accordingly (Roe v Vingut, 117 NY 204, 212). This is true despite the fact that a literal reading of the portion under construction might yield an inconsistent or contradictory meaning because of the use of awkward language inadvertently or carelessly chosen (Haug v Schumacher, 166 NY 506, 513; Williams v Jones, 166 NY 522, 533). As the Court of Appeals pointed out in an early opinion: “[i]f we can see that the inapt, or careless, use of language by the testator has created the difficulty in ascertaining his intention, but, nevertheless, feel certain as to what he meant, from reading the whole instrument in connection with the clause in question, we may subordinate the language to that meaning.” (Matter of Miner, 146 NY 121, 130-131.)
A will speaks at the date of death of the testator unless a contrary intention appears (Matter of Goldberg, 275 NY 186). But, a will speaks from its execution as to a specific legacy (Matter of Ireland, 231 App Div 288, revd on other grounds 257 NY 155). In searching for testamentary intent of the testatrix, it is only logical that when she drew her *743 will two months and 12 days after she executed the inter vivos trust agreement, her intention was to dispose of her residuary estate. It was at this point in time, September 28,1981, she made her calculations on how she wanted her estate distributed.
In considering the effect on the will and the inter vivos trust, the court does not look to what happened when the will became operative, but at what the testatrix intended when she arranged the disposition of her residuary estate (Matter of Hoffman, 201 NY 247, 255).
The court finds that the residuary estate under the will pours over to the inter vivos trust and is to be distributed as set forth in the inter vivos trust as amended.