Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María L. Bonet Cardona<br><br>Peticionaria<br><br><br>v.<br><br><br>Judith Holahan, Jane E. Popp,<br><br>Thomas Holahan, Karen Count<br><br>Recurridos | Certiorari<br><br>2011 TSPR 56<br><br>181 DPR \_\_\_\_ |

Número del Caso: CC     - 2010 - 343

Fecha: 7 de abril de 2011

Tribunal de Apelaciones:

      Regió   n Judicial de Aguada

Panel Especial integrado por su presidenta, la Juez Bajandas Vélez, el Juez Cordero Vázquez y el Juez Cortés Trigo

Abogado de la Parte Peticionaria:

      Lcdo. Ramiro Lladó Martínez

Abogado de la Parte Recurrida:

      Lcda  . Jane Becker Whitaker

Materia: División de Comunidad de Bienes

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribuna                              l. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María L. Bonet Cardona

    Peticionaria

       v.

                           CC-2010-343

Judith Holahan, Jane E. Popp,
Thomas Holahan, Karen Count

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 7 de abril de 2011

Visto el recurso presentado, se dicta sentencia revocando el dictamen emitido por el Tribunal de Apelaciones. Asimismo, se paralizan los procedimientos y se le concede a la parte recurrida un término improrrogable de **noventa (90) días**, contados a partir de la notificación de esta Sentencia, para que presente su acción en torno al fideicomiso en las cortes del estado de Nueva York. Su reconvención se desestimará si la parte no presenta su reclamo en el foro alternativo en el tiempo concedido para ello o si una vez presentado su reclamo el foro alternativo asume jurisdicción. Por el contrario, si la parte recurrida presenta su

reclamación a tiempo y el foro alternativo determina no asumir jurisdicción, el Tribunal de Primera Instancia debe continuar con los procedimientos.

Se devuelve el caso de epígrafe al foro primario. Una vez transcurra el término aquí concedido, el Tribunal de Primera Instancia deberá determinar la suma por concepto de honorarios de abogado que la parte peticionaria deberá satisfacer por su temeridad.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emite Opinión de conformidad a la que se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta.


                          Aida Ileana Oquendo Graulau
                          Secretaria de Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


María L. Bonet Cardona

    Peticionaria

       v.

                            CC-2010-343

Judith Holahan, Jane E. Popp,
Thomas Holahan, Karen Count

    Recurridos


Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta


San Juan, Puerto Rico, a 7 de abril de 2011

El presente recurso requiere que determinemos la relación existente entre un testamento y un fideicomiso otorgados en el estado de Nueva York, así como el efecto —si alguno— de una cláusula *in terrorem* incluida en el fideicomiso, sobre los derechos de la peticionaria. Igualmente, debemos determinar si nuestros tribunales son un foro inapropiado para dilucidar parte de estas controversias. Por último, se nos solicita que revisemos una determinación de responsabilidad civil extracontractual por, entre otros asuntos, haberse presentado un pleito civil. Veamos.

I.

El 7 de julio de 2004, el señor Vincent C. Hart creó un fideicomiso *inter-vivos*[1] revocable ("*revocable living trust*"). Dicho instrumento se perfeccionó en Nueva York, estado en el cual él residía y estaba domiciliado. El fideicomiso se estableció con una aportación económica inicial de $10.00, permitiendo que posteriormente se realizaran mayores contribuciones de cualquier tipo. Entre las reglas de administración que incluyó el Sr. Hart en el documento, dispuso que al momento de su muerte los bienes del fideicomiso se distribuirían de la siguiente manera: se realizarían varios pagos en efectivo a doce personas específicamente nombradas en el documento; cuatro vehículos de motor serían distribuidos entre cuatro personas; y finalmente, el resto de los bienes del fideicomiso deberían ser divididos en partes iguales entre sus dos hermanas, las señoras Judy Holahan (20%) y Jane Popp (20%), sus dos sobrinos, Thomas Holahan (20%) y Karen Count (20%), y su amiga la señora María Bonet (20%).

En el fideicomiso también se incluyó una cláusula *in terrorem* ("*contest clause*"), en la cual el Sr. Hart dispuso que cualquier persona que tratara de atacar u oponerse, directa o indirectamente, a la validez del fideicomiso, incluyendo sus enmiendas, o presentara una acción legal para revocarlo, se consideraría como premuerta y perdería todo

---

[1] A diferencia de los fideicomisos conocidos como "*testamentary trusts*", los cuales quedan formalmente establecidos al momento de la muerte del fideicomitente, los fideicomisos *inter vivos* o "*living trusts*" se crean durante la vida del fideicomitente.

derecho o interés en la propiedad del fideicomiso. Por último, el Sr. Hart estipuló que la validez del instrumento debería ser determinada con arreglo a las leyes del estado de Nueva York, y las controversias sobre su interpretación y administración, se atenderían bajo las leyes del estado en el que se estuviera llevando a cabo su administración.

Aproximadamente un año más tarde, el 11 de mayo de 2005, el Sr. Hart otorgó un testamento en Nueva York. En él ordenó que todas sus propiedades inmuebles radicadas en Puerto Rico fueran vendidas al justo valor del mercado y los ingresos producto de la venta fueran divididos en partes iguales entre sus dos hermanas, sus dos sobrinos y su amiga; los mismos beneficiaros residuales mencionados en el fideicomiso. Asimismo, pidió que se tomara en consideración la distribución de tres autos realizada en el fideicomiso (aparentemente éstos tres vehículos estaban en los inmuebles de Puerto Rico y el cuarto en Nueva York). En la siguiente sección del testamento, el Sr. Hart ordenó que todas sus propiedades restantes, de cualquier naturaleza y clase, dondequiera que estuvieran, se entregaran a su fideicomiso.

Así las cosas, el 10 de marzo de 2006, el Sr. Hart falleció en el estado de Nueva York sin herederos forzosos. El 24 de mayo de 2006, la Sra. María L. Bonet presentó en el Tribunal de Primera Instancia una demanda de división de comunidad de bienes contra las Sras. Judith Holahan y Jane Popp, las dos hermanas del causante.[2] Alegó que ella y el

_____

[2] Aunque en la demanda la señora María L. Bonet brindó una dirección residencial y postal de Puerto Rico, ambas partes

causante habían mantenido una relación consensual durante diecinueve años en la que hubo un pacto implícito de comunidad de bienes, y a la cual ambos aportaron labor, esfuerzo y sacrificio. Por ello, sostuvo que el testamento otorgado en Nueva York adolecía de ciertas deficiencias y no podía ejecutarse hasta tanto se dilucidaran sus derechos sobre la alegada comunidad.

Poco después la parte demandada presentó una moción ante el foro primario en la cual solicitó que se desestimara la acción por falta de partes indispensables, ya que no se había incluido en la demanda a los sobrinos del causante, quienes también tenían intereses en la ejecución del testamento. En la alternativa, las demandadas informaron que ya había comenzado en el estado de Nueva York un procedimiento judicial para determinar quiénes son los herederos del causante, por lo cual solicitaron que se paralizaran los procedimientos en el Tribunal de Primera Instancia hasta que culminara el caso en Nueva York. La parte demandante replicó que no interesaba impugnar la validez del testamento, sino obtener la mitad de los bienes pertenecientes a la supuesta comunidad de bienes que se había creado entre el causante y ella. Asimismo, solicitó permiso para enmendar la demanda e incluir a los dos sobrinos, a lo cual el foro primario accedió.

Posteriormente, el 21 de diciembre de 2006, la parte demandada presentó su contestación junto a una reconvención.

---

están contestes en que la demandante tiene su domicilio en el estado de Nueva York, y es allí donde reside.

Allí alegó que el Sr. Hart expresó su última voluntad mediante dos documentos "inextricablemente interlazados: un fideicomiso y un testamento". Contestación y Reconvención, pág. 1. Alegaron que la cláusula *in terrorem* incluida en el fideicomiso era igualmente aplicable al testamento y, ya que los bienes del causante debían ser divididos entre todos los herederos a razón de 20% para cada uno, el tribunal debía emitir una sentencia declaratoria resolviendo que la parte demandante había violado dicha cláusula al exigir el 50% más un 20% adicional de los bienes, por lo cual no tenía derecho alguno a los bienes del caudal.

Así las cosas, el 23 de marzo de 2007, la parte demandante informó al tribunal que deseaba desistir de su reclamo sin perjuicio, lo cual fue concedido por el foro primario. El 17 de octubre de 2007, la demandante presentó su contestación a la reconvención reiterando que su reclamo original sólo buscaba obtener un derecho que le asiste bajo nuestro ordenamiento y no asumió ninguna postura que fuera contraria a la declaración del causante. Por ello, adujo que tenía pleno derecho a su participación del caudal relicto. Entre otras incidencias procesales, los demandados solicitaron autorización al Tribunal de Primera Instancia para vender las propiedades inmuebles del causante radicadas en Puerto Rico a los fines de satisfacer deudas contributivas relacionadas con los inmuebles. También sugirieron que los ingresos producto de las ventas fueran divididos entre los cuatro familiares nombrados en el testamento y una quinta parte —aquélla que podría corresponder a la Sra. María L.

Bonet— fuera depositada en el tribunal en espera de la resolución del presente pleito. El 11 de enero de 2008, el foro primario emitió una orden autorizando la venta y ordenando el depósito de una quinta parte de los ingresos.

Por otro lado, el 15 de mayo de 2008, la parte demandada presentó una reconvención enmendada —autorizada posteriormente por el tribunal— para añadir una causa de acción por daños. Alegaron que desde la muerte del Sr. Hart la demandante había incurrido en una serie de actuaciones que habían perjudicado el valor de los bienes inmuebles, había causado daños emocionales a la familia del causante y producido multas ascendientes a $206,856.96. Ese mismo día los demandados informaron que habían vendido dos de los inmuebles y habían satisfecho las deudas contributivas federales y estatales. El 3 de junio de 2008, depositaron en el Tribunal de Primera Instancia un cheque por $50,000, cantidad estimada por el albacea como la correspondiente a cada uno de los beneficiarios del testamento.

El 30 de julio de 2008, la parte demandante contestó la reconvención enmendada. Sostuvo que el fideicomiso y el testamento no están entrelazados y que los bienes inmuebles localizados en Puerto Rico no forman parte de los bienes del fideicomiso. Asimismo alegó que el lenguaje incorporado en el fideicomiso, particularmente la cláusula *in terrorem*, no aplica al testamento. La demandante también arguyó que el tribunal no podía entender en la interpretación del fideicomiso ya que los contactos mínimos relacionados a dicho

documento están en Nueva York y su propio lenguaje requiere la aplicación de la ley de dicho estado.  Por último, negó haber causado daños a los demandados.

Luego de varios conflictos procesales, el 15 de mayo de 2009, la parte demandada presentó en el Tribunal de Primera Instancia una moción de sentencia sumaria parcial.  En esta expresó que no existían controversias de hecho pendientes de resolución, sino que el foro primario sólo debía resolver: 1) si la presentación de la demanda original en el caso de autos, más una reclamación adicional en Puerto Rico y otra en Nueva York, violó la cláusula *in terrorem* incluida en el fideicomiso del Sr. Hart; 2) si el fideicomiso y el testamento son documentos relacionados; 3) y si, independientemente de la cláusula *in terrorem*, la demanda original carecía de mérito, por lo cual procede la imposición de honorarios contra la demandante.  En lo pertinente, la parte demandada sostuvo que el testamento otorgado por el causante fue una enmienda al fideicomiso y que la reclamación de la demandante cuestionaba la división establecida en dicho documento, pues exigía la mitad del caudal sito en Puerto Rico.  Igualmente, alegó que la acción de división de comunidad de bienes presentada por la demandante fue frívola y que ésta, en un procedimiento separado, estaba impugnando el exequátur mediante el cual se legalizó el testamento del causante en Puerto Rico.  También alegó que la parte demandante había comenzado una acción en los tribunales de Nueva York solicitando un inventario e informe al albacea y fiduciario del testamento y el fideicomiso.  Todo ello, según

los demandados, constituía una clara violación a la cláusula *in terrorem* del fideicomiso, por lo cual la Sra. María L. Bonet había perdido todos sus derechos sobre las propiedades del caudal.

En la moción de sentencia sumaria parcial también alegaron que la resistencia de la demandante a vender los bienes de Puerto Rico ocasionó que disminuyera su valor en el mercado y tuvieran que pagar multas por las contribuciones sobre los inmuebles. A tenor de lo anterior, solicitaron la imposición de honorarios de abogado.

El 29 de mayo de 2009, la parte demandante solicitó una prórroga de treinta días para contestar la moción de sentencia sumaria parcial. Aunque el foro primario concedió dicha prórroga el 1 de junio de 2009, la parte demandante presentó su réplica —y su propia solicitud de sentencia sumaria— el 2 de junio, es decir, un día luego de vencer el término concedido. En la referida réplica la parte demandante reafirmó que el fideicomiso del causante es un documento independiente de su testamento y que en éste no existe una cláusula *in terrorem*. Igualmente, sostuvo que no es posible disponer de los bienes incluidos en el testamento utilizando cláusulas que no constan expresas en el propio documento. Alegó que las propiedades inmuebles de Puerto Rico mencionadas en el testamento no forman parte del fideicomiso. Finalmente, volvió a plantear que, por un lado e independientemente de lo anterior, la acción de división de comunidad de bienes que presentara inicialmente no constituyó

una violación a la cláusula *in terrorem* contenida en el fideicomiso y, por otro lado, los tribunales de Nueva York son el foro más conveniente para dilucidar si dicha cláusula fue violada. Ello en parte porque existen procedimientos en curso en la *Surrogate's Court* de Nueva York relacionados al testamento y el fideicomiso.

El Tribunal de Primera Instancia emitió sentencia sumaria parcial a favor de la parte demandada el 6 de julio de 2009, en la cual concedió todos sus reclamos. En síntesis, bajo el derecho vigente en Puerto Rico, resolvió que el testamento era una enmienda al fideicomiso y por ello la cláusula *in terrorem* aplicaba a ambos. También dispuso que la acción de división de comunidad de bienes instada por la Sra. María L. Bonet no tenía méritos y, junto a las acciones presentadas en los foros judiciales de Nueva York, constituía una violación a dicha cláusula; por lo cual ella había perdido todos sus derechos sobre los bienes incluidos tanto en el testamento como en el fideicomiso. Asimismo, el foro primario concluyó que la conducta de la parte demandante fue temeraria por lo que debía compensar a los demandados por los daños sufridos, y ordenó la distribución del dinero consignado en el tribunal —producto de la venta de los inmuebles— entre los otros cuatro beneficiarios del testamento. El Tribunal de Primera Instancia decidió que la presentación tardía de la oposición por parte de la demandante, tuvo el efecto de aceptar todos los hechos alegados en la moción de sentencia sumaria parcial.

De dicha determinación recurrió la parte demandante ante el Tribunal de Apelaciones el 31 de julio de 2009. Allí alegó que el foro primario había errado al no tomar en consideración su oposición por haberse presentado un día después de vencer la prórroga concedida. De igual forma, reiteró sus argumentos en torno a la independencia entre el testamento y el fideicomiso; la inaplicabilidad de la cláusula *in terrorem* al testamento; que sus actuaciones no violaban la referida cláusula; y que el mejor foro para evaluar los efectos de dicha cláusula eran las cortes de Nueva York. De otra parte, la recurrente añadió que no procedía la determinación de responsabilidad por daños.

Atendidas las posturas de las partes, el Tribunal de Apelaciones modificó y confirmó la sentencia parcial. Estimó que aunque el foro primario debió considerar la oposición presentada por la demandante, no erró al determinar que debía responder por los daños que sus actuaciones durante el litigio hubieran causado a los recurridos. El foro apelativo intermedio concluyó que la cláusula *in terrorem* del fideicomiso se había incluido en el testamento porque en éste se hace referencia a unas disposiciones del fideicomiso, y porque en el fideicomiso también se establecieron reglas para el momento de la muerte del causante. Al mismo tiempo, resolvió que el testamento es una enmienda al fideicomiso ya que mediante aquél se excluyeron los inmuebles de Puerto Rico de los bienes incluidos en el fideicomiso. En cuanto a la posibilidad de examinar la violación de la cláusula *in terrorem*, el Tribunal de Apelaciones determinó que los

tribunales de Puerto Rico tienen jurisdicción para evaluar el testamento del Sr. Hart debido a que dispone de bienes sitos en nuestra jurisdicción. Sin embargo, modificó la sentencia por entender que el foro primario había errado al analizar la alegada violación de la cláusula *in terrorem* a la luz del derecho de Puerto Rico, en vez de utilizar el derecho del estado de Nueva York. Por ello devolvió el caso al foro primario para que volviera a examinar dicho asunto al amparo de la legislación y jurisprudencia neoyorquina.

Tras ser declarada no ha lugar una oportuna moción de reconsideración presentada al foro apelativo intermedio, la parte demandante recurrió ante esta Curia mediante recurso de *certiorari* y solicita que revoquemos las sentencias recurridas. El pasado 30 de abril de 2010 expedimos el recurso, tras lo cual ambas partes presentaron sus respectivos alegatos. En éstos cada parte nos reitera los argumentos y teorías presentadas a los foros recurridos, las cuales ya han sido descritas previamente. Visto todo lo anterior, pasamos a resolver.

II.

La controversia que hoy atendemos gira en torno a la interpretación del testamento y el fideicomiso otorgados por el Sr. Vincent C. Hart. Específicamente, debemos determinar si la Sra. María L. Bonet perdió su derecho de participar en la distribución de bienes ordenada por el causante en dichos instrumentos, ello en virtud de la cláusula *in terrorem*. De otro lado, hemos de examinar si la conducta de la parte

peticionaria creó una causa de acción en daños a favor de los recurridos.

Para una mejor comprensión del caso de autos, es necesario precisar la fuente del conflicto entre las partes. En esencia, se trata de la extensión de la cláusula *in terrorem* del fideicomiso a las disposiciones del testamento. Tanto la peticionaria como los recurridos, coinciden en que la cláusula *in terrorem* está expresa en el fideicomiso. Empero, los recurridos sostienen que ésta también cubre el testamento debido a que éste enmendó el fideicomiso. Tal enmienda, según alegan, resulta del hecho de que en el fideicomiso el Sr. Hart había dejado instrucciones para disponer de todos sus bienes al momento de su muerte y, posteriormente, en el testamento estableció unas reglas especiales para sus bienes inmuebles de Puerto Rico. Esta teoría parece haber sido adoptada por los foros recurridos, los cuales determinaron que el testamento era una enmienda del fideicomiso.

Dicho esto, y antes de interpretar los contornos de los documentos en controversia, debemos aclarar que éstos están sujetos a las formalidades que establece el derecho del estado de Nueva York; ello ya que fue allí donde se otorgaron ambos. 31 L.P.R.A. sec. 11; *Cabrer v. Registrador*, 113 D.P.R. 424 (1982). Siendo así, veamos algunas de las normas de dicha jurisdicción.

III.

A.

Al igual que en Puerto Rico, en la mayor parte de las jurisdicciones estatales de Estados Unidos la voluntad del testador debe ser colegida de las palabras del propio testamento. *Véanse* 32 L.P.R.A. sec. 2129; *Licari v. Dorna*, 148 D.P.R. 453, 461 (1999); William J. Bowe & Douglas H. Parker, *Page on Wills*, Matthew Bender, 2004, Vol. 4, sec. 30.2, pág. 7 ("Under most Wills Acts, it is from the words of the will that testator's intention is to be deduced."). El estado de Nueva York también sigue la referida norma. Allí las cortes están llamadas a realizar una lectura comprensiva de todo el testamento para ejecutar la intención del testador. *Matter of Larkin*, 9 N.Y.2d 88 (1961); *Matter of Fabbri*, 2 N.Y.2d 236 (1957). Cuando dicha intención está claramente establecida en las disposiciones del testamento, es innecesario recurrir a otros documentos con el pretexto de hallar la voluntad del causante. *Matter of Carper*, 50 N.Y.2d 974 (1980); *Matter of Gulbenkian*, 9 N.Y.2d 363 (1961). Siendo así, las cortes no pueden añadir o suprimir palabras del testamento al ejercer su función. *Matter of Krooss*, 302 N.Y. 424 (1951).

De otra parte, es preciso recordar que tanto en Puerto Rico como en Nueva York, los testamentos y los fideicomisos son instrumentos jurídicos diferentes. Éstos sirven objetivos diversos y están regulados por distintas normas. *Véase* Bowe & Parker, *op. cit.*, 2003, Vol. 1, sec. 6.15. Sin embargo, aún tratándose de documentos independientes

—especialmente en las tradiciones jurídicas del *common law*— éstos pueden estar relacionados. Por ejemplo, la legislación neoyorquina permite que un fideicomiso *inter-vivos* revocable sea posteriormente enmendado mediante el testamento del fideicomitente, siempre y cuando exista en el testamento una orden expresa a esos efectos. NY CLS EPTL sec. 7-1.16.

En otros estados es posible integrar a los términos del testamento disposiciones contenidas en otros documentos creados antes del testamento, ello a través de la doctrina conocida como incorporación por referencia. De manera que si en un testamento hay una referencia expresa a cláusulas de un fideicomiso creado previamente, se podría concluir que las mismas fueron incluidas en el testamento. *Véase*, George Gleason Bogert & George Taylor Bogert, *Trusts and Trustees*, West Publ. Co., 2$^{da}$ Ed. Rev., 1984, sec. 105, págs. 280-83 ("It is usually held that if a will refers to a document which is in existence at the time the will is executed, speaks of the document as so existing, clearly identifies the document, and shows an intent to incorporate it into the will, such incorporation may be held to have been effected so that the terms of the deed or other inter vivos document become a part of the will and may be probated along with it.") (Citas omitidas). No obstante, por más de un siglo —y como norma general—, las cortes del estado de Nueva York han rehusado aplicar la doctrina de incorporación por referencia. Su postura ha sido descrita como una medida de seguridad

contra el fraude y el error. *In re Fowles' Will*, 222 N.Y. 222, 232 (1918).

Otra forma en la que comúnmente se relacionan los testamentos y los fideicomisos en la jurisdicción estadounidense, es mediante las disposiciones conocidas como "*pour-over*". Usualmente estas disposiciones se incluyen en el testamento para ordenar que todos o algunos de los bienes del caudal relicto sean transferidos a un fideicomiso *inter-vivos* revocable, donde entonces serán administrados y distribuidos de acuerdo con los términos del fideicomiso. NY CLS EPTL sec. 3-3.7; *In re Estate of Herrig*, 471 N.Y.S.2d 809 (N.Y. Sur. Ct. 1984); *Restatement of the Law, 3$^d$, Property*, 1999, sec. 3.8 ("A 'pour-over' devise is a provision in a will that (i) adds property to an inter vivos trust or (ii) funds a trust that was not funded during the testator's lifetime but whose terms are in a trust instrument that was executed during the testator's lifetime."). Estas cláusulas *pour-over*, en las que no se altera el carácter independiente de cada instrumento, se han convertido en un mecanismo sumamente popular de la planificación hereditaria en los Estados Unidos. *Véanse* Elias Clark, Louis Lusky & Arthur W. Murphy, *Gratuitous Transfers: Wills, Intestate Succession, Trusts, Gifts and Future Interests*, West Publ. Co., 2$^{da}$ Ed., 1977, pág. 334 ("The pour-over trust has become a popular and useful estate planning device whereby the testator directs that the distributable probate estate, in whole or in part, be added to a trust which the testator or someone else . . . has previously established."); Bogert & Bogert, *op. cit.*,

1992, sec. 264.5, pág. 430 ("Increasingly, in recent years, a revocable inter vivos trust agreement or declaration of trust has been used in conjunction with a will directing that all or a part of the residue of the estate be added to the trust in order to secure the unified administration of the trust, probate and other assets under the terms of one trust."); Austin Wakeman Scott, William Franklin Fratcher & Mark L. Ascher, *Scott and Ascher on Trusts*, Aspen Publ., 5ᵗᵃ Ed., 2006, Vol. 1, sec. 7.1.3, pág. 347 ("As these statutes became increasingly sophisticated, and as more and more states enacted them, the pour-over will became a standard estate planning technique.").

B.

Vistos los principios hasta aquí señalados, pasemos a examinar las disposiciones pertinentes del testamento del Sr. Hart.

En el artículo 2 del testamento, el testador estableció cómo quería que fuera distribuida su propiedad al momento de su muerte.  En la primera sección ordena que sus bienes inmuebles en Puerto Rico sean vendidos y las ganancias se distribuyan entre cinco personas allí nombradas.  Esta sección también solicita que se tenga en cuenta que dos automóviles y un tractor deben ser entregados a tres personas específicas, según se ordenó en el fideicomiso *inter-vivos* creado previamente.  Posteriormente, en la sección 2 del mismo artículo (intitulada "*Pour-Over to my Living Trust*"), el testador estableció que todos sus bienes remanentes deben ser distribuidos al fideicomiso.  Tras evaluar estas

disposiciones, los foros recurridos concluyeron que el testamento era una enmienda al fideicomiso *inter-vivos*, por lo cual la cláusula *in terrorem* aplicaba ambos. Erraron en su razonamiento.

No hay nada en el testamento que pueda llevarnos a concluir que en efecto se trató de una enmienda al fideicomiso. Aquél no contiene una orden expresa para enmendar el fideicomiso como lo permite la sección 7-1.16 de la *Estates, Powers and Trusts Law* de Nueva York. NY CLS EPTL sec. 7-1.16. La referencia que se hace al fideicomiso en la sección 1 del artículo 2 del testamento, tampoco enmienda el primero. Con dicha expresión el testador simplemente llamó la atención al hecho de que en cuanto a ciertos vehículos de motor localizados en los bienes inmuebles de Puerto Rico, ya existían reglas para su distribución en el fideicomiso *inter-vivos*. Podemos deducir que con ello se quiso evitar que los mismos fueran vendidos junto a la propiedad inmueble en la que se encontraban. Mas no se incorporaron disposiciones del fideicomiso en el testamento.

Por otro lado, la sección 2 es una cláusula *pour-over*. Con ella se están transfiriendo al fideicomiso *inter-vivos* todos los bienes que pertenecían al Sr. Hart al momento de su muerte, con excepción de los inmuebles sitos en Puerto Rico. Adviértase que se transfieren los *bienes pertenecientes al causante*, pues son éstos sobre los cuales el testador tenía pleno dominio. Así, dichos bienes pasan a ser parte del *patrimonio del fideicomiso*. Por ello fallan los argumentos de la parte recurrida, en tanto sostiene que el Sr. Hart dejó

reglas para disponer de sus bienes al momento de su muerte en el fideicomiso y luego creó reglas especiales en el testamento para algunos de esos bienes. Tal postura obvia principios básicos de la figura del fideicomiso.

Cuando el Sr. Hart —o cualquiera otra persona— aportó bienes al fideicomiso, éstos dejaron de pertenecerle y vinieron a ser parte del capital de una entidad separada e independiente: el fideicomiso. Las normas contenidas en el instrumento que creó el fideicomiso regulan la administración y disposición de esos bienes que pertenecen al fideicomiso. Sin embargo, los bienes que no habían sido transferidos al fideicomiso cuando el causante murió, seguían siendo parte del patrimonio del Sr. Hart y por lo tanto su distribución quedaba sujeta a las normas del testamento. De manera que cada instrumento regula bienes distintos, pertenecientes a dos sujetos diferentes.

No se trata de que el testamento extrajo bienes del fideicomiso para disponer de ellos de una forma especial, como alegan los recurridos. Sino de que los bienes de los cuales dispone el testamento nunca formaron parte del fideicomiso. Es ahora, con la muerte del testador y la ejecución del testamento, que algunos de los bienes del causante pasarán a ser parte del fideicomiso; éste es el *pour-over*. Entre esos bienes que serán transferidos al fideicomiso en virtud del testamento, como vimos, no se encuentran los inmuebles radicados en Puerto Rico.

Es forzoso concluir, entonces, que la relación entre el testamento y el fideicomiso objeto de controversia se limita al común sistema de *pour-over* de la tradición anglosajona. No se trata de instrumentos "inextricablemente entrelazados". Cada uno mantuvo su carácter independiente, no hubo enmiendas ni incorporaciones que los afectaran. *Véase*, Robert J. Lynn, *Problems with Pour-Over Wills*, 47 Ohio St. L.J. 47, 62 (1986) ("When language is free from ambiguity, and is clearly either pour-over language, on the one hand, or incorporating language, on the other, there is no call for construction —the matter is simply one of proper identification of the theory to be applied in the particular case."). Siendo ello así, y ya que la cláusula *in terrorem* que provocó esta disputa no está incluida en el texto del testamento —único recurso del cual debemos derivar la voluntad del testador—, las acciones judiciales entabladas por la peticionaria no la han privado de sus derechos sobre los bienes distribuidos en el testamento del Sr. Hart.

IV.

De otra parte, el Tribunal de Apelaciones, siguiendo el razonamiento de que el testamento enmendaba el fideicomiso —y que nuestros tribunales tienen jurisdicción para examinar el testamento debido a que dispone de inmuebles sitos en Puerto Rico— concluyó que podía interpretar y ejecutar la cláusula *in terrorem* incluida en el fideicomiso y determinar si la peticionaria había perdido sus derechos sobre ambos instrumentos. Sin embargo, devolvió el caso al Tribunal de

Primera Instancia para que éste aplicara el derecho de Nueva York.

Ahora, teniendo en cuenta que, según concluimos, el testamento y el fideicomiso son instrumentos independientes, tenemos que determinar si debemos adentrarnos en el análisis de la cláusula *in terrorem* del fideicomiso. Específicamente, debemos atender el reclamo de la parte peticionaria a los efectos de que nuestros tribunales no son el foro adecuado para atender dicha controversia, siendo las cortes del estado de Nueva York el mejor foro. Vemos pues que se trata de una alegación de *forum non conveniens*.

A.

Recientemente, "para asegurar la organización eficiente de los recursos judiciales y para obtener una 'solución justa, rápida y económica de todo procedimiento'", este Tribunal reconoció "la utilidad de incorporar a nuestra jurisdicción [la doctrina de *forum non conveniens*] que permit[e] a los jueces rehusar ejercer su jurisdicción en circunstancias excepcionales, a favor de los intereses de las partes y la justicia". *Ramírez Sainz v. Cabanillas*, 2009 T.S.P.R. 151, pág. 47, 177 D.P.R. __ (2009). En dicho caso expusimos que ante una moción de *forum non conveniens*, el promovente tiene que demostrar que el foro local es claramente inapropiado para atender la controversia y que existe otro foro en otra jurisdicción que también tiene autoridad para entender en la materia y es claramente el más apropiado. *Id.*, pág. 48. Entre los factores que se deben considerar para determinar si el foro doméstico es claramente

inapropiado, están: la conveniencia para las partes de litigar en la otra jurisdicción; dónde se encuentran las fuentes de prueba y los mecanismos para obtenerlas; si la moción se presenta oportunamente; los términos prescriptivos; el reconocimiento de las sentencias y la posibilidad de ejecutarlas en la jurisdicción donde las partes tienen los bienes que podrían ser afectados. *Id.*, págs. 49-50. *Véanse además*, referente a la aplicación de la doctrina de *forum non conveniens* a pleitos sobre fideicomisos, Bogert & Bogert, *op. cit.*, sec. 292, pág. 244; Scott, Fratcher & Ascher, *op. cit.*, sec. 45.2.2.4, pág. 3102 ("It is important to consider not only the relationship, if any, that the forum state has to the trust but also the relationship that one or more other states may have to the trust. It is important also to consider whether a court of another other state has jurisdiction and is already exercising, or would exercise, that jurisdiction. Finally, it is important to consider the precise issue at hand.").

Una vez se demuestra que el foro local es inapropiado, el tribunal debe paralizar los procedimientos y conceder un término razonable al demandante para que presente su acción ante el foro más adecuado. La reclamación ante nuestros tribunales se desestimará si dicho término transcurre sin que la parte demandante presente su acción en el foro adecuado o, habiendo sido presentada, el foro alternativo asume jurisdicción. No obstante, si el demandante presenta su acción dentro del término concedido y el foro adecuado

declina asumir jurisdicción, el tribunal doméstico original debe continuar con los procedimientos. *Id.*, págs. 48-49.

B.

En el caso de autos, desde la presentación de su reconvención la peticionaria ha sostenido que las cortes del estado de Nueva York son el foro más apropiado para evaluar la aplicación de la cláusula *in terrorem* contenida en el fideicomiso. Ha reiterado constantemente que todas las partes del litigio tienen su domicilio y residencia en el estado de Nueva York, que el fideicomiso fue creado en dicho estado, donde estaba domiciliado el fideicomitente, y es allí donde radican la mayor parte de los bienes del fideicomiso. Asimismo, señala que el fideicomitente expresamente seleccionó la ley del estado de Nueva York para regular la validez e interpretación del fideicomiso, que la evidencia relacionada al fideicomiso está en Nueva York, y serán sus cortes las que eventualmente liquidarán dicho fideicomiso ya que allí están domiciliados la mayoría de los beneficiarios. Otro factor importante que debemos considerar es que ya existen procedimientos entre las partes relacionados al fideicomiso *inter-vivos* en la *Surrogate's Court* de Nueva York.[3]

---

[3] Las *Surrogate's Courts* del estado de Nueva York gozan de amplia jurisdicción para entender en asuntos de sucesiones y liquidación de fideicomisos, entre otros. *Véase* N.Y. C.L.S. S.C.P.A. secs. 200, 207:
"    . . . .
    3. The court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to

Ante tales hechos, sobre los cuales no existe controversia, es evidente que nuestros tribunales son inadecuados para dilucidar si se ha violado la cláusula *in terrorem* contenida en el fideicomiso. Son las cortes de Nueva York el foro más apropiado para ello, pues todos los vínculos del fideicomiso están radicados en dicha jurisdicción. Aún más, será mucho más conveniente para las partes continuar su litigio en dicho estado por ser el domicilio de todos, contar con todas las fuentes de evidencia, y poder ejecutar en el propio foro la sentencia que allí se emita en su día —sería más oneroso tratar de ejecutar en Nueva York una sentencia emitida por los Tribunales de Puerto Rico. Téngase en cuenta que es en Nueva York donde está la mayor parte de, si no todos, los bienes del fideicomiso. Finalmente, debido a que la controversia entre las partes versa mayormente sobre la interpretación del testamento y el fideicomiso, no han realizado un

---

estates and the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires. . . . .
1. The surrogate's court of any county has jurisdiction over the estate of any lifetime trust which has assets in the state, or of which the grantor was a domiciliary of the state at the time of the commencement of a proceeding concerning the trust, or of which a trustee then acting resides in the state or, if other than a natural person, has its principal office in the state. . . ."

descubrimiento de prueba sustancial que pudiera perjudicar sus intereses al tener que trasladar el litigio al foro apropiado.

En vista de lo anterior, concluimos que los tribunales de Puerto Rico son claramente inapropiados para evaluar los derechos de las partes bajo el fideicomiso *inter-vivos* creado por el Sr. Hart. Son las cortes del estado de Nueva York el foro adecuado para dilucidar dicha controversia.

V.

Finalmente, se nos requiere que revisemos la imposición de responsabilidad civil extracontractual a la parte peticionaria por los supuestos daños que causaron sus actuaciones durante el presente pleito a los recurridos. Veamos el derecho aplicable.

A.

Reiteradamente hemos expresado que en nuestra jurisdicción no existe per se la acción civil de daños y perjuicios como resultado de un pleito civil. *García v. E.L.A.*, 163 D.P.R. 800 (2005); *Giménez Álvarez v. Silén Maldonado*, 131 D.P.R. 91, 96-97 (1992); *Commonwealth Loan Corp. v. García*, 96 D.P.R. 773 (1968); *Berríos v. International Gen. Electric*, 88 D.P.R. 109 (1963); *Pereira v. Hernández*, 83 D.P.R. 160 (1961); *Suárez v. Suárez*, 47 D.P.R. 97 (1934); *López de Tord & Zayas v. Molina*, 38 D.P.R. 823 (1928). Sólo como excepción a esta norma, hemos reconocido una causa de acción por persecución maliciosa cuando se presentan hechos extremos en los que se acosa al demandante con pleitos injustificados e instados maliciosamente.

*Giménez Álvarez v. Silén Maldonado*, *supra*; *Fonseca v. Oyola*, 77 D.P.R. 525 (1954). "Siendo la malicia un elemento esencial de la persecución maliciosa, en nuestro ordenamiento se le cataloga como una acción en daños y perjuicios causados por conducta torticera intencional . . . ." *García v. E.L.A.*, *supra*, pág. 810. Sin embargo, como norma general la "*sanción judicial por el uso indebido de los procedimientos legales se traduce en la condena en costas y honorarios de abogado y cuando proceda, intereses legales por temeridad dentro del mismo pleito*". *Giménez Álvarez v. Silén Maldonado*, *supra*, pág. 97, citando a *Pereira v. Hernández*, *supra*, págs. 164-65.

B.

En primer lugar, debemos señalar que una lectura comprensiva de la moción de sentencia sumaria presentada ante el foro primario por la parte recurrida, no refleja que se solicitara la imposición de responsabilidad civil extracontractual por las actuaciones de la peticionaria. La súplica de la moción solicitó que se "expida una sentencia parcial determinando que María Bonet no tiene derecho alguno a participar en el caudal relicto de Vincent Hart y determine que ha litigado este caso con temeridad". Moción de Sentencia Sumaria Parcial, pág. 11. Sólo podríamos inferir un reclamo de daños y perjuicios de una sucinta expresión contenida en la aplicación del derecho sobre los efectos de la cláusula *in terrorem*, donde se expuso que se debía resolver que la Sra. Bonet "tiene la obligación de compensar los beneficiarios restantes por los daños causados por sus

actuaciones". *Id.*, pág. 7. No obstante, aún si consideráramos que en efecto se presentó un reclamo de daños y perjuicios, veremos que el mismo no procede.

El Tribunal de Primera Instancia determinó que procedía una acción de daños y perjuicios porque la peticionaria actuó de forma temeraria al instar una demanda frívola sobre división de comunidad de bienes. Igualmente, el Tribunal de Apelaciones concluyó que la demanda original de la peticionaria no tenía méritos y que por ésta haberse negado a vender las propiedades sitas en Puerto Rico, los recurridos tuvieron que pagar las contribuciones de los inmuebles con penalidades por retrasos. Por ello, y por haber presentado la peticionaria otras acciones en las cortes de Nueva York y Puerto Rico, el foro apelativo intermedio confirmó la determinación de responsabilidad civil extracontractual.

Los hechos descritos por los foros recurridos no dan paso a una causa de acción por daños y perjuicios. Las contribuciones pagadas por los recurridos no son producto del presente litigio, son una obligación que emana de la ley. Asimismo, los intereses acumulados por el retraso en el pago de las contribuciones pudieron haberse evitado si se hubiera satisfecho la deuda contributiva a tiempo. La misma no tenía que ser pagada necesariamente con el dinero que produjera la venta de los inmuebles. No podemos concluir que la negativa de la parte peticionaria a vender los inmuebles radicados en Puerto Rico, mientras reclamaba tener derecho a la mitad de ellos, constituyera un acto malicioso que originara una obligación civil extracontractual.

Igual razonamiento se impone ante las alegaciones de que la peticionaria ha comenzado otros procesos judiciales en Nueva York y en Puerto Rico. Por ejemplo, los foros recurridos llaman la atención al hecho de que la peticionaria presentó otra acción[4] en nuestros tribunales para atacar la validez del exequátur con el cual se había hecho efectivo en Puerto Rico el testamento del Sr. Hart.[5] Sin embargo, en este último caso el foro primario determinó dejar sin efecto el exequátur que se realizara previamente, pues no se notificó el procedimiento a todas las partes interesadas. El Tribunal de Apelaciones confirmó dicha sentencia.[6]

Ya hemos expresado que proseguir un pleito civil contra un demandado, como norma general, no produce una acción de daños. En este caso no encontramos razones para apartarnos de dicha norma. No estamos ante una conducta extrema de acoso malicioso a través del foro judicial. Más bien, podría concluirse —como en efecto hizo el Tribunal de Primera Instancia— que la parte peticionaria incurrió en conducta temeraria mientras litigó este pleito. Siendo la imposición de temeridad una determinación discrecional del foro primario, y al no ser impugnada ante nosotros por la peticionaria, no debemos intervenir con la misma. Sin embargo, no procede la imposición de responsabilidad por daños y perjuicios contra la parte peticionaria.

---

[4] *María L. Bonet v. Thomas Holahan, et als.*, Caso Civil Núm. KAC 2008-1037.
[5] *Ex parte Thomas Holahan*, Caso Civil Núm. KJV 2007-1471.
[6] *María L. Bonet v. Thomas Holahan, et als.*, Caso Civil Núm. KLAN 2010-00287.

Por todo ello, estimo necesario dictar sentencia revocando el dictamen del Tribunal de Apelaciones, conceder un término a la parte recurrida para que presente su acción en el estado de Nueva York y devolver el caso al foro primario para que imponga honorarios de abogado a la parte peticionaria.

Anabelle Rodríguez Rodríguez
Juez Asociada